INTERNATIONAL MARINE CARRIERS, Plaintiff,

v.

The OIL SPILL LIABILITY TRUST FUND (also known as, The National Oil Pollution Fund), Defendant.

Civ. A. No. H–93–2328.

United States District Court,
S.D. Texas,
Houston Division.

July 18, 1994.

Mark Cohen, Royston Rayzor Vickery & Williams, Houston, TX, for International Marine Carriers.

Gordon Speights Young, U.S. Attorneys Office, Houston, TX, Keith B. Letourneau, U.S. Dept. of Justice, Washington, DC, Eleanor A. Robinson–Gaither, Asst. U.S. Atty., Houston, TX, for Oil Spill Liability Trust Fund.

Keith B. Letourneau, U.S. Dept. of Justice, Washington, DC, for the U.S.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Plaintiff International Marine Carriers ("IMC") filed this suit appealing the denial of its claim for reimbursement of "removal costs" incurred under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C.A. §§ 2701, *et seq.* Pending before this court is a motion to dismiss under Rule 12(b)(1) filed by the United States (Docket Entry No. 6); IMC's motion for summary judgment or, alternatively, motion to remand to the agency for reconsideration (Docket Entry Nos. 12 and 13); and a cross-motion for summary judgment filed by the United States (Docket Entry No. 16). After careful review of the facts, the parties' submissions, and the applicable authority, the court DENIES the motion to dismiss and DENIES IMC's motion for summary judgment. The United States's motion for summary judgment is GRANTED, and this case is dismissed.

1. IMC agreed to:
indemnify, release and otherwise hold harmless the Government from any and all liability whatsoever which would be covered by the [pollution and incident] insurance (including oil pollution) ... The Government shall be

## I. Background

On March 9, 1990, plaintiff IMC and the Department of the Navy entered into a contract under which IMC agreed to operate naval vessels, including the USNS SEALIFT ATLANTIC, on behalf of the United States Military Command. IMC also agreed to indemnify the United States for any oil pollution liability less than $100,000,000 which arose from its operation of the USNS SEALIFT ATLANTIC ("indemnity agreement").[1] (Docket Entry No. 6).

On April 13, 1991, IMC moored the USNS SEALIFT ATLANTIC at the Amerada Hess Terminal on the Houston Ship Channel to load jet and bunker fuels. The jet fuel was loaded without incident. Before transferring the bunker fuel, Jerry W. Stokes ("Stokes"), a dockman for the Amerada Hess Corporation, ("Amerada Hess"), and Allen H. Goings ("Goings"), Chief Engineer of the USNS SEALIFT ATLANTIC, executed a Declaration of Inspection. It is undisputed that the parties agreed that the USNS SEALIFT ATLANTIC would be loaded with a total of 3,000 barrels of bunker fuel at a rate of 1,500 barrels per hour. Transfer of the bunker fuel was to be performed in accordance with the Declaration, the Amerada Hess Terminal manual, and applicable regulations. The actual transfer of bunker fuel exceeded 3,000 barrels. Approximately twelve (12) barrels of bunker fuel spilled from the starboard fuel tank of the USNS SEALIFT ATLANTIC into the Houston Ship Channel. IMC, in accordance with the OPA oil spill response requirements, remediated the spilled bunker fuel, and paid cleanup costs in excess of $49,000.

On July 31, 1991, the Coast Guard issued the Amerada Hess Terminal a letter, faulting it for an untimely response to the spill. The Coast Guard also initiated a license revocation proceeding against Goings for negligent supervision of the bunker fuel transfer. On December 16, 1991, an Administrative Law

responsible for any such liability in excess of [IMC's] $100,000,000 insurance coverage per ship per incident and shall indemnify, release and hold harmless [IMC] for such excess liability. (Docket Entry No. 6; p. 79 of attached contract number N00033–90–C–4003).

Judge ("ALJ") issued an Opinion finding that Goings was not negligent in performing his duties as chief engineer and dismissing the license revocation proceeding against Goings with prejudice. (Docket Entry No. 1; Ex. B at 21). The Opinion also stated that during the fuel transfer procedure, Stokes negligently left the Amerada Hess Terminal dock shack for more than five minutes without first notifying Goings of his intent to leave and without establishing any means of communicating with Goings or the USNS SEALIFT ATLANTIC. *Id.*

On December 26, 1991, IMC filed a claim with the Coast Guard, National Pollution Funds Center, pursuant to section 2713 of the OPA. The claim sought reimbursement from the Oil Spill Liability Trust Fund (the "Fund") of $49,048.19, IMC's OPA "removal costs." (Docket Entry No. 1, Ex. C). On March 3, 1992, the Fund denied IMC's claim on the ground that IMC could not assert any third-party defense to liability under OPA section 2703. (Docket Entry No. 1, Ex. D). IMC did not dispute that it is an OPA "responsible party."

IMC appealed the denial of its claim on April 21, 1992. (Docket Entry No. 1, Ex. E). Commander Richard Cool, on behalf of the Fund, denied IMC's appeal in an Opinion Letter dated December 16, 1992. That letter found that IMC failed to establish a section 2703 defense, in part because there was a contractual relationship between IMC and the Amerada Hess Terminal. (Docket Entry No. 1; Ex. F).

On July 28, 1993, IMC filed suit over this final agency action. The complaint asserts jurisdiction under section 2717(b) of the OPA and section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. IMC seeks reimbursement of $50,043.19 for "costs associated with the cleanup of the spill"; attorney's fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and interest and costs.

The defendant Fund filed a motion to dismiss under Rule 12(b)(1), asserting five grounds: (1) sovereign immunity bars IMC's claim against the Fund/United States; (2) the Fund is not a proper party defendant; (3) IMC lacks standing because its indemnity agreement with Amerada Hess precludes recovery; (4) IMC's claim is not ripe because the Contract Disputes Act governs the determination whether the indemnity agreement bars reimbursement from the Fund; and (5) the USNS SEALIFT ATLANTIC is a public vessel excluded from the OPA reimbursement scheme. Defendant also sought summary judgment on the ground that the action of the agency in denying IMC's claim was not arbitrary, capricious, or an abuse of discretion.

IMC filed a motion for summary judgment or, alternatively, motion to remand to the agency for reconsideration on two grounds: (1) IMC is entitled to assert the OPA section 2703 third-party defense because no contractual relationship existed between it and the Amerada Hess Terminal at the time of the discharge; and (2) the United States Navy–IMC contract was outside the agency record and therefore irrelevant to IMC's claim for reimbursement.

## II. Standard of Review

A federal court will dismiss a case for "lack of jurisdiction over the subject matter." Fed.R.Civ.Pr. 12(b)(1). Under Rule 12(b)(6), "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In a motion to dismiss, the allegations of the complaint must be accepted as true, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), and the complaint construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511; see *Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1088 (5th Cir.1990), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Leonard,* 828 F.2d at 294. To sustain the burden, the nonmoving party must produce evidence admissible at trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514; *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If reasonable minds can differ regarding a genuine issue of material fact, summary judgment should not be granted. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511.

### III. Defendant Fund's Motion to Dismiss

IMC asserts subject matter jurisdiction under section 2717(b) of the OPA and section 10(a) of the APA, 5 U.S.C. § 702. IMC contends that OPA section 2712, 2713(e), or 2715, and APA section 10(c), waive sovereign immunity for actions seeking review of denial of claims against the Fund. The Fund concedes that its determinations of OPA claims may be reviewed under section 10(c) of the APA. It argues, however, that the APA waiver of sovereign immunity does not apply to actions seeking reimbursement of OPA "removal costs." Even if the waiver does apply, the Fund maintains that it cannot be sued *"eo nomine,"* in its own name. The Fund also contends that IMC lacks standing to seek review under the APA, and that IMC's claims are not ripe. Finally, the Fund seeks to characterize the USNS SEALIFT ATLANTIC as an OPA "public vessel," to which the OPA reimbursement scheme does not apply.

### A. Judicial Review Under the OPA

■ Section 2717(b) of the OPA provides, in applicable part, that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter." 33 U.S.C. § 2717(b). Section 2717(b) is a grant of original jurisdiction; it does not provide for judicial review of claims against the Fund. *Cf. Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (indicating that the question of judicial review under the APA can be distinct from the question of federal court jurisdiction).

■ Even if IMC could assert jurisdiction under section 2717(b), sovereign immunity precludes review of IMC's claims. IMC's suit for reimbursement to IMC by the Fund is a suit against the United States, barred by sovereign immunity absent consent to suit or waiver. *United States v. Sherwood,* 312 U.S. 584, 585–88, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941); *Geyen v. Marsh,* 775 F.2d 1303, 1307 (5th Cir.1985). A waiver of sovereign immunity must be express. *United States v. Mitchell,* 445 U.S. 535, 537–38, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Bank One, Tex., N.A. v. Taylor,* 970 F.2d 16, 33 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). Any waiver is to be construed narrowly, *United*

*States v. King,* 395 U.S. 1, 2–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969), with ambiguities resolved in favor of the government. *Library of Congress v. Shaw,* 478 U.S. 310, 317–18, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Voluntary Purchasing Groups v. Reilly,* 889 F.2d 1380, 1385 (5th Cir.1989).

Nothing in OPA section 2712, 2713, or 2715 can be construed as a waiver of sovereign immunity. Section 2712 creates a right to petition the Fund for reimbursement of costs incurred by the United States or non-liable private parties in removing oil discharged into navigable waters. 33 U.S.C. § 2712. Section 2713 sets out the procedure for "presenting" such a claim to the Fund. 33 U.S.C. § 2713. Section 2715 authorizes the Attorney General to bring suit on behalf of the Fund to recover money paid on OPA claims. 33 U.S.C. § 2715. IMC cites no authority that OPA sections 2712, 2713 or 2715 provide for judicial review of claims against the Fund. These sections do not create, nor can this court imply, a right to sue the Fund directly.

### B. Judicial Review Under the APA

Subject to certain exceptions not applicable here,[2] section 704 of the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[3] Having determined that IMC's claims are not reviewable under the OPA, the court must decide whether review is proper under the APA.

### 1. Waiver of Sovereign Immunity Under Section 702

■ Section 702 provides, in applicable part, that "[a]n action in a court of the United States seeking relief other than money damages ... shall not be dismissed ... on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702. The Fund argues that sovereign immunity bars review of IMC's claims under the APA because IMC seeks money damages. The Fund also argues that it is not a proper defendant.

■ A money award may be equitable relief where it results from an action enforcing a statutory mandate to pay money. *Bowen v. Massachusetts,* 487 U.S. 879, 899–901, 108 S.Ct. 2722, 2735, 101 L.Ed.2d 749 (1988); *Beverly Hosp. v. Bowen,* 872 F.2d 483, 487 (D.C.Cir.1989). IMC seeks reimbursement of "removal costs" required under the OPA,[4] not compensation for harm caused by the Fund's denial of its claim. Reimbursement of OPA "removal costs" from the Fund constitutes restitution, not damages.

■ A close analogy is found in cost recovery actions under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. § 9607, and section 7003(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.A. § 6973(a). Courts recognize CERCLA recovery actions as equitable claims.[5] *See, e.g., United States v. Northeastern Pharmaceutical Chemical Co. Inc.,* 810 F.2d 726, 749 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) ("[w]hen the government seeks recovery of its response costs under CERCLA or its abatement costs under RCRA, it is in effect seeking equitable relief

---

2. Section 701(a) provides for review, "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

3. It is undisputed that the Fund's denial of IMC's appeal constitutes final agency action.

4. "Removal costs" include "any ... costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan." 33 U.S.C. § 2702(b)(1)(B).

Section 2712(a) of the OPA states that [t]he Fund shall be available to the President for— ... (4) the payment of claims in accordance with section 2713 of this title for uncompensated removal costs determined by the President to be consistent with the National Contingency Plan or uncompensated damages[.]

Section 2713(b)(1) of the OPA provides that [c]laims for removal costs or damages may be presented first to the Fund— ... (B) by a responsible party who may assert a claim under section 2708 of this title[.]

5. CERCLA section 107 and RCRA section 7003(a), like OPA section 2712, provide for reimbursement of costs incurred from remediation of a discharge or response to a threat of discharge.

in the form of restitution or reimbursement of the costs it expended in order to respond to the health and environmental danger presented by hazardous substances"); *United States v. Northernaire Plating Co.,* 685 F.Supp. 1410, 1413 (W.D.Mich.1988), *aff'd sub nom. United States v. R.W. Meyer, Inc.,* 889 F.2d 1497 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *G.L. Indus. of Michigan, Inc. v. Forstmann–Little,* 800 F.Supp. 695, 698 (S.D.Ind.1991) (CERCLA cost recovery actions are equitable in nature when brought by private parties). The APA's waiver of sovereign immunity therefore applies to IMC's suit for judicial review.

Section 702 provides that a suit seeking review of agency action shall not be dismissed for failure to name the United States as a party defendant. 5 U.S.C. § 702. Instead, courts generally grant leave to amend to name the proper party. *See, e.g., Bowman v. United States Dep't of Agriculture,* 352 F.2d 281, 284 (5th Cir.1965). IMC's failure to name the United States as a party does not preclude consideration of the merits of IMC's claims. Due to this court's disposition of the pending motions set forth below, the amendment of IMC's pleadings to name the United States would be futile, and it is denied on that ground.

## 2. Standing and Ripeness

The Fund next argues that IMC lacks standing to seek review, or has no claim ripe for review, because the indemnity agreement between IMC and the United States bars the reimbursement IMC seeks and because the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, governs disputes under the indemnity agreement. The CDA requires that all claims relating to government contracts must be presented to a United States contracting officer, and, if the value of the claim exceeds $50,000, certified by the officer, before judicial review is allowed. 41 U.S.C. § 605. The Fund contends that IMC has not satisfied the procedural requirements of the CDA. IMC urges the court to ignore the indemnity agreement because the agreement allegedly is not part of the administrative record.

To establish standing under the APA, a plaintiff must demonstrate an "injury-in-fact." An "injury-in-fact" requires: (1) an actual or imminent threat of injury; (2) fairly traceable to the defendant's conduct; (3) that is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A plaintiff is not required to show that the relief, if granted, *will* redress the alleged harm. *Lujan,* 504 U.S. at 559–61, 112 S.Ct. at 2136. Whether a claim is ripe for review turns upon "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano,* 430 U.S. 99, 102–04, 97 S.Ct. 980, 983.

In denying IMC's appeal, the Fund did not consider whether the indemnity agreement barred reimbursement of IMC's OPA removal costs. Instead, the Fund denied IMC's appeal on the ground that IMC was not entitled to the OPA section 2703 third-party defense to liability. 33 U.S.C. § 2703. The Fund concluded that there was a contractual relationship between IMC and the Amerada Hess Terminal that precluded a finding that the fuel spill was caused solely by a third-party. (Docket Entry No. 1, Ex. F., pp. 2–3).

To review the Fund's determination, this court need not consider whether the indemnity agreement between IMC and the United States bars reimbursement of IMC's removal costs. The indemnity agreement does not control whether IMC is entitled to assert an OPA section 2703 defense. Only if IMC first establishes that the Fund wrongfully denied IMC an OPA section 2703 defense, and that IMC is otherwise entitled to recover its removal costs, would the indemnity agreement become relevant. IMC's alleged injury would be partially redressed by a finding that the Fund wrongfully denied IMC the OPA third-party defense. *Goland v. United States,* 903 F.2d 1247, 1254 (9th Cir.1990); *Pitt v. Pine Valley Golf Club,* 695 F.Supp. 778, 785 (1988).

Because the indemnity agreement does not control review of IMC's claims, this court concludes that the procedural requirements of the CDA do not apply. IMC's claim is ripe for review by this court.

### C. Whether the USNS SEALIFT AT-LANTIC is an OPA public vessel

In its final argument for dismissal for failure to state a claim, the Fund characterizes the USNS SEALIFT ATLANTIC as a "public vessel." Because discharges from public vessels are expressly excluded from the OPA cost recovery scheme, 33 U.S.C. § 2702(c)(2), the Fund argues that the OPA cannot apply to IMC's claims.

██ Section 2701(29) defines a "public vessel" as "a vessel owned or bareboat chartered *and* operated by the United States." 33 U.S.C. § 2701(29) (emphasis added). The USNS SEALIFT ATLANTIC was operated by IMC under a contract with the Navy. The OPA does not clarify whether a United States' owned vessel operated by a private party under contract is a "public vessel." [6] In his opinion on behalf of the Fund, Commander Cool declined to resolve this question, "defaulting" to the Coast Guard position that vessels in the same class as the USNS SEALIFT ATLANTIC are not OPA public vessels.[7] Because the court denies IMC's summary judgment motion as set forth below, the court does not decide whether the Fund's public vessel argument warrants dismissal.

### IV. The Cross–Motions for Summary Judgment

IMC moves for summary judgment on its claim for reimbursement from the Fund on two grounds. First, IMC argues that the Fund abused its discretion, or acted arbitrarily and capriciously, in denying IMC's OPA claim because no contractual relationship existed between IMC and the Amerada Hess Terminal at the time of the fuel transfer. Second, IMC again asserts that this court cannot consider whether the indemnity agreement bars its claims because the argument was not raised before the administrative decisionmaker and the agreement is not included in the administrative record. The United States argues that the resolution of these same issues warrants summary judgment in the government's favor.

### A. Denial of IMC's Third–Party Defense

██ OPA section 2708 provides that:

[t]he responsible party for a vessel ... from which oil is discharged ... may assert a claim for removal costs ... only if the responsible party demonstrates that— (1) the responsible party is entitled to a defense to liability under [33 U.S.C. § 2703]. 33 U.S.C. § 2708.

OPA section 2703 provides a defense to section 2708 liability where a

responsible party establishes, by a preponderance of the evidence, that the discharge ... and ... removal costs were caused solely by ... an act or omission of a third party, *other than* ... a third party whose act or omission occurs in connection with *any contractual relationship* with the responsible party ..., if the responsible party establishes, by a·preponderance of the evidence, that the responsible party—(A)

---

**6.** Private vessels chartered to the United States government have been characterized as public vessels under the Public Vessels Act ("PVA"), 46 U.S.C.App. §§ 781, *et seq. Blanco v. United States,* 775 F.2d 53, 59–60 (2d Cir.1985). Government owned vessels operated by private parties for public purposes also are considered public vessels under the PVA. *Nelsen v. Research Corp. of University of Hawaii,* 752 F.Supp. 350, 353 (D.Hawaii 1990) (considering a U.S. research vessel chartered to a university as a PVA public vessel where the university did not acquire any ownership interest and performed research under contract with the United States); *Santos v. RCA Service Co.,* 603 F.Supp. 943, 946

(E.D.La.1985) (U.S. Navy vessel operated by private contractor for public purpose is PVA public vessel).

**7.** "The Navy, through Military Sealift Command (MSC), contends that the SEALIFT Class tankers, including the SEALIFT ATLANTIC, are public [vessels]. The [United States Coast Guard] USCG's position is that these ships are not public [vessels] under Titles 33 and 46.... I intend to remain silent on the public [vessel] issue, by default taking the USCG position, and reject the claim on reconsideration." (Docket Entry No. 17; Ex. A.).

exercised due care with respect to the oil concerned, ...; and (B) took precautions against foreseeable consequences of those acts or omissions. 33 U.S.C. § 2703(a)(3) (emphasis added).

A successful assertion of the section 2703(a)(3) defense would require IMC to show that: (1) the Amerada Hess Terminal was the sole cause of the discharge; (2) no contractual relationship existed between the USNS SEALIFT ATLANTIC and the Amerada Hess Terminal at the time of the discharge; and (3) IMC exercised due care and took precautions against foreseeable consequences.

Commander Cool denied IMC's appeal, on behalf of the Fund, because he determined that IMC's arrangement with the Amerada Hess Terminal was contractual. The final opinion states that:

> [a] contractual relationship ... refers to any contractual arrangement, not just direct or indirect contracts. There is a contractual relationship between an oil terminal and a vessel operator to which it is transferring oil. This contractual relationship is even stronger when the oil being transferred is to be used by the vessel for its own bunkers.... The Declaration of Inspection, signed by the Chief Engineer for the ATLANTIC and the dockman for [the] Terminal, further evidences a contractual relationship. (Docket Entry No. 1; Ex. F).

The Fund claims that: (1) the commercial contacts between IMC and the Terminal are sufficient to imply a contractual arrangement; (2) the Declaration of Inspection evidences this contractual relationship; (3) IMC is an intended third-party beneficiary to the

contract between the Navy and the Terminal; and (4) a maritime contract lien arose under 46 U.S.C. § 971 [8] when the Terminal transferred fuel to IMC. IMC argues that the Declaration of Inspection is merely a prebunkering checklist under 33 C.F.R. Part 156.120, not a contract. IMC does not address the Fund's determination that the commercial contacts constitute an OPA contractual relationship.

The OPA does not explicitly define the phrase "any contractual relationship." Whether the Fund abused its discretion in denying IMC's appeal turns on the reasonableness of the Fund's determination that there was a contract between IMC and the Amerada Hess Terminal. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–46, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

The OPA section 2703(a)(3) defense is analogous to the CERCLA section 9607(b)(3) third-party defense.[9] Under CERCLA, a contractual relationship "includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession ...". 42 U.S.C. § 9601(35). Some district courts have limited availability of the CERCLA third-party defense "to situations where the responsible party has no connection to the third party." *Philadelphia v. Stepan Chemical Co.*, 18 Envtl.L.Rep. 20133, 20134, 1987 WL 15214 (E.D.Pa.1987); *United States v. Stringfellow*, 661 F.Supp. 1053, 1061 (C.D.Cal.1987) (the CERCLA third-party defense only applies where "a totally unrelated third party is the sole cause of the release"); *O'Neil v. Picillo*, 682 F.Supp. 706, 728 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1115, 107

---

**8.** The Federal Maritime Lien Act ("FMLA"), 46 U.S.C.A. § 971 (West 1975), provides that:

> any person furnishing repairs, supplies, towage, use of drydock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by a suit *in rem*, and it shall not be necessary to allege or prove that credit was given to the vessel. (Repealed and replaced by 46 U.S.C.A. § 31342 (West 1994)).

**9.** CERCLA section 9607(b) provides, in relevant part, that:

> [t]here shall be no liability ... for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—(3) an act or omission of a third party other than ... one whose act or omission occurs *in connection with a contractual relationship, existing directly or indirectly*, with the defendant. 42 U.S.C. § 9607(b) (emphasis added).

**1106**

L.Ed.2d 1022 (1990). Other courts allow the defense unless the third-party conduct occurs in connection with a contract between the defendant and the third party. *United States v. Monsanto Co.*, 858 F.2d 160, 169 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *Shapiro v. Alexanderson,* 743 F.Supp. 268, 270–71 (S.D.N.Y.1990); *United States v. Hooker Chemicals & Plastics Corp.,* 680 F.Supp. 546, 558 (W.D.N.Y.1988). Even an indirect contractual relationship may be preclude the defense. *CPC International, Inc. v. Aerojet–General Corp.,* 777 F.Supp. 549 (W.D.Mich.1991) (denying the CERCLA third-party defense where a party acquired a contaminated site from the bankruptcy trustee for the prior owner).

The contractual relationship element to the OPA section 2703 third-party defense is intended to prevent otherwise responsible parties from avoiding liability by pointing to the conduct of foreseeable third parties. *See* 1990 U.S.CODE CONG. & ADMIN.NEWS 722, 734. The Fund relied on the relationship between IMC and the Terminal, including the execution of the Declaration of Inspection. This court finds that the Fund was reasonable in concluding that the section 2703 third-party defense does not extend to the type of arrangement between IMC and the Amerada Hess Terminal at the time of the fuel spill. This court cannot find it unreasonable for the Fund to determine that the commercial contacts between IMC and the Terminal, including the Declaration of Inspection, constitute an OPA contractual relationship within the meaning of·section 2703(a)(3).

**B. Whether the Indemnity Agreement Bars IMC's Claims**

Because the court affirms the Fund's determination that IMC is not entitled to assert the section 2703 third-party defense, the court does not consider whether the indemnity agreement between IMC and the Navy bars IMC's claim for reimbursement of its OPA removal costs.

**V. Conclusion**

The court DENIES the Fund's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6).

The court AFFIRMS the Fund's determination that a contractual relationship existed between IMC and the Amerada Hess Terminal at the time of the fuel spill, and that this contractual relationship precludes IMC's successful assertion of the OPA section 2703 third-party defense to liability. The court therefore DENIES IMC's summary judgment motion, and GRANTS the government's motion for summary judgment. This case is DISMISSED with prejudice.

**FINAL JUDGMENT**

In accordance with the Court's Order of even date, this action is DISMISSED with PREJUDICE.

THIS IS A FINAL JUDGMENT.