**Alicia TANGUIS, et al.**

v.

**M/V WESTCHESTER, et al.**

**No. CIV.A. 01–449.**

United States District Court,
E.D. Louisiana.

April 12, 2001.

Lawrence Anthony Arcell, Barker, Boudreaux, Lamy & Foley, New Orleans, LA, David Michael Hufft, Pivach & Pivach, Belle Chasse, LA, Patrick Hillary Hufft,

Law Offices of Fred Gisevius, New Orleans, LA, Richard J. Arsenault, Nablett, Beard & Arsenault, Alexandria, LA, Richard J. Dodson, Law Office of Richard J. Dodson, Baton Rouge, LA, Val Patrick Exnicios, Liska, Exnicios & Nungesser, New Orleans, LA, Raul R. Bencomo, Bencomo & Associates, New Orleans, LA, Alan J. Abadie, Alan J. Abadie, Attorney at Law, Chalmette, LA, Rebecca Cunard, Cunard Reis Law Firm, Baton Rouge, LA, Henry T. Dart, Henry Dart, Attorneys at Law, Covington, LA, Philip Francis Cossich, Jr., Cossich, Martin, Sumich & Parsiola, Belle Chasse, LA, Gladstone N. Jones, III, Kevin Earl Huddell, Smith, Jones & Fawer, New Orleans, LA, Walter C. Dumas, Dumas & Associates Law Corporation, Baton Rouge, LA, Henry Price Mounger, III, Gauthier, Downing, LaBarre, Beiser & Dean, Metairie, LA, Daniel E. Becnel, Jr., Law Offices of Daniel E. Becnel, Jr., Reserve, LA, for plaintiffs.

Charles Felician Lozes, Laurence R. DeBuys, IV, Terriberry, Carroll & Yancey, New Orleans, LA, Peter Ashton Barbee, Barbee & Associates, LLC, New Orleans, LA, Robert Burns Fisher, Jr., Thomas Deming Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for defendants.

## ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is Plaintiffs Alicia Tanguis, et al.'s Motion to Remand. For the following reasons, the Motion is DENIED.

### A. BACKGROUND

This case involves an oil spill in the Mississippi River in Plaquemines Parish, Louisiana, on November 28, 2000. On December 1, 2000, just a few days following the spill, a group of plaintiffs with fishing and oyster interests in the affected area filed a putative class action lawsuit in Louisiana state court against several defendants allegedly responsible for the spill. The plaintiffs exclusively alleged state law causes of action in the original petition. On December 8, 2000, the plaintiffs filed a First Amending and Supplemental Class Action Petition for Damages and Other Relief. The amended petition added a claim under the Oil Pollution Act, 33 U.S.C. § 2701, et seq. ("OPA"). By their own admission, plaintiffs served neither of these pleadings on any defendant until January 29, 2001. See Pl's Mem. p. 2 ("The initial Class Action Petition for Damages and citation of the state court were first formally served upon a defendant, Marine Oil (through its counsel ...) on January 29, 2001.") [1]

Prior to service, however, the plaintiffs apparently made at least some of the defendants aware that they intended to seek damages under OPA. Pursuant to OPA's presentment requirement, 33 U.S.C. § 2713, plaintiffs' counsel addressed a "Notice of Claim" letter to defendants M/T WESTCHESTER (the vessel that allegedly caused the oil spill), Ermis Maritime Corporation ("Ermis," the vessel's manager), and Marine Oil Trader 3, Limited ("Marine Oil," the vessel's owner). The letter stated, *inter alia:*

> Please be advised that we intend to pursue a claim against you as owner/owner *pro hac vice*/opera-

---

1. Pl.'s Ex. B is a proof of service on counsel for defendant Marine Oil Trader 3, Limited and Ermis Maritime Corporation dated January 29, 2001. In their Notice of Removal and opposition memorandum, the defendants state that counsel for Marine Oil received the amended complaint on January 23. The Court need not determine the exact date of service to resolve the instant motion. There is no mention of service on any other defendant in any of the documents presented to the Court in connection with this motion.

tor/manager/charterer of the M/T WESTCHESTER for damages under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* Under the provisions of the Oil Pollution Act, we intend to file a claim against you in court if you either deny our clients' claims, or fail to settle all claims, within 90 days.

\* \* \* \* \* \*

Please contact us to discuss settlement of our clients' claims under the Oil Pollution Act before we are obliged to prosecute these claims on behalf of a class of claimants in a court of competent jurisdiction.

Documents submitted by the plaintiffs indicate that Ermis received the letter by fax on December 5, 2000 and by certified mail on December 18, 2000. There is no clear evidence that Marine Oil received the letter.[2] However, in a December 13, 2000 fax to one of the plaintiffs' counsel, Marine Oil's counsel wrote that "[u]pon [plaintiffs'] releasing the M/T WESTCHESTER from attachment the owners have authorized the following: ... We agree that OPA 90 is applicable to the claims asserted by the plaintiffs." This correspondence also included a Coast Guard Vessel Certificate of Financial Responsibility, which reads in part, "Vessel Operator *MARINE OIL TRADER 3 LTD* has established evidence of financial responsibility, in accordance with 33 CFR 138, to meet liability under section 1002 of the Oil Pollution Act of 1990 ...." (Emphasis in original.) In any event, the exchange of these documents occurred over a month before any pleadings were served on any defendant.

On February 20, 2001, less than a month after service of the initial and amended pleading on Marine Oil, the defendants removed plaintiffs' action to this Court. In their Notice of Removal, the defendants alleged that they first received notice of a basis for federal question jurisdiction on January 23, 2001, when Marine Oil's counsel received the amended petition containing the OPA claims. The defendants alternatively alleged federal question jurisdiction under the admiralty and maritime laws of the United States.

The plaintiffs now challenge the propriety of removal and move to remand their case to Louisiana state court.

## B. *LAW AND ANALYSIS*

### 1. *Timeliness of Removal*

Plaintiffs first challenge the timeliness of the removal. A defendant generally may remove a civil action brought in state court to a federal district court that would have had jurisdiction had the plaintiff opted to bring the action there. *See* 28 U.S.C. § 1441. Notice of removal must be filed within 30 days after the defendant receives a copy of the initial pleading setting forth the grounds for removal or, "[i]f the case stated by the initial pleading is not removable," within 30 days after the defendant receives "a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (emphasis added). The parties agree that the initial petition by itself did not set forth grounds for removal but disagree vigorously as to whether the OPA "Notice of Claim" letter constitutes "other paper"

---

**2.** The plaintiffs assert that the fax and certified mail receipts demonstrate that "the notice of claim was received by defendants ..." Pl's Mem. p. 2 (emphasis added). However,

the fax and certified letter receipt attached as exhibits establish only that the notice was sent to Ermis in Piraeus, Greece.

from which defendants could have ascertained federal question removability.[3]

█ The Court finds this issue moot. By their own admission, plaintiffs did not serve a copy of the initial pleading on any defendant until January 29, 2001. Thus, the OPA "Notice of Claim" letter constitutes a pre-receipt demand letter, which, by the "plain language of the second paragraph of § 1446(b)", cannot start the 30-day time period for removal. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir.1992) ("The plain language of the second paragraph of § 1446(b) requires that if an 'other paper' is to start the thirty-day time period, a defendant must receive the 'other paper' after receiving the initial pleading."). The fact that plaintiffs filed the initial pleading before they delivered the demand letter is of no consequence, since the defendants did not receive the initial pleading until after they received the letter: In addition to running counter to the plain language of the statute, determining whether the defendants knew that the initial complaint had been filed before they received a copy of it would require an impermissible inquiry into their subjective knowledge. *See* 28 U.S.C. § 1446(b) (time period for removal begins after the defendant receives a copy of the initial pleading setting forth the grounds for removal); *Chapman*, 969 F.2d at 163 (rejecting rule that would require courts "to inquire into what a particular defendant may or may not subjectively know" about the grounds for removal and adopting "bright line rule" that period of removability begins "to run from the defendant's receipt of the initial

pleading" and solely based on the allegations contained therein); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996) ("subjective knowledge of the defendant ... cannot start accrual of the 30-day removal period").

The defendants removed plaintiffs' civil action to this Court within an appropriate time after receipt of the initial pleading.

### 2. Whether the Oil Pollution Act Permits Removal

In the alternative, the plaintiffs assert the novel theory that OPA, by its own terms, prevents removal. The removal statute states that, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to an appropriate federal court. 28 U.S.C. § 1441(a). Although OPA does not expressly preclude removal, plaintiffs argue that a Congressional intent to prevent removal nevertheless can be divined from OPA's jurisdictional provision, 33 U.S.C. § 2717, and its savings provision, 33 U.S.C. § 2751. This apparently is a question of first impression anywhere, as none of the parties have cited any authority on point, and the Court has found none.[4]

█ With respect to federal courts, OPA's jurisdictional provision states that "[e]xcept as provided in subsections (a) and (c) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in

---

3. For purposes of this section, the Court assumes that OPA claims are removable pursuant to 28 U.S.C. § 1441(b). The removability of OPA claims is expressly addressed in the next section.

4. In *Leboeuf v. Texaco*, 9 F.Supp.2d 661 (E.D.La.1998), Judge Porteous remanded an

action containing OPA claims as untimely removed. His decision implies that the suit would have been removable pursuant to 28 U.S.C. § 1441(b), but does not expressly address the issues raised here. *See id.* at 663–65.

controversy." 33 U.S.C. § 2717(b). This provision clearly establishes original federal district court jurisdiction over OPA claims.

The plaintiffs seem to imply that the inclusion of the word "original" in subsection (b) means that federal courts have jurisdiction over OPA claims only if they are originally filed in federal court. Hence, a federal court would have no jurisdiction over OPA claims originally brought in state court, and such actions could not be removed. This argument painfully distorts the ordinary understanding of the concept of "original jurisdiction," which is generally understood to be a "court's power to hear and decide a matter before any other court can review the matter." BLACK'S LAW DICTIONARY 856 (7th ed.1999). Stated differently, a court invested with original jurisdiction is a court "of first instance," as opposed to an appellate court. MARY KAY KANE, CIVIL PROCEDURE IN A NUT SHELL 8 (4th ed.1996). That the drafters of OPA intended the ordinary usage of the term "original jurisdiction" is illustrated by *International Marine Carriers v. Oil Spill Liability Trust Fund*, 903 F.Supp. 1097, 1101 (S.D.Tex.1994), which held that OPA provides federal district courts with original jurisdiction over OPA cases but not with the power of "judicial review of claims against the [Oil Spill Liability Trust] Fund." [5]

With respect to state courts, OPA's jurisdictional provision states that a "State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this chapter, may consider claims under this chapter or State law and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable

for all purposes of this chapter." 33 U.S.C. § 2717(c). This section is an express exception to exclusive original federal jurisdiction over certain OPA claims and establishes concurrent state court jurisdiction in those cases.

As a general matter, "the existence of concurrent state and federal jurisdiction does not preclude removal of an action to a federal court." 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3721, at 303 (3d ed.1998) (footnote omitted); *Baldwin v. Sears, Roebuck & Co.*, 667 F.2d 458, 460 (5th Cir.1982). ("Unless ... there is an express declaration by Congress to the contrary, all types of civil actions, in which there is concurrent original jurisdiction in both federal and state courts, are removable."). Thus, the mere fact that OPA creates concurrent state court jurisdiction for some types of OPA claims does not demonstrate a Congressional intent to prohibit removal.

The structure of OPA does not suggest otherwise, since the creation of concurrent state court jurisdiction complements OPA's non-preemption principals. As one group of commentators has observed, state court "jurisdiction under the OPA ... to hear claims for removal costs and damages is not surprising, as the OPA explicitly does not preempt state law in the area of oil spill liability and compensation." Cynthia M. Wilkinson, L. Pittman, Rebecca F. Dye, *Slick Work: An Analysis of the Oil Pollution Act of 1990*, 12 J. ENERGY NAT. RESOURCES & ENVTL. L. 181 (1992). The Senate Report regarding OPA expresses an intent to "affirm[ ] the rights of States to protect their own air, water, and land resources by permitting them to establish

---

5. The Fund is established by 28 U.S.C. § 9509, and OPA contains procedures for making claims against it. *See* 33 U.S.C.

§§ 2701(11), 2712 and 2713; *International Marine Carriers*, 903 F.Supp. at 1102.

State standards which are more restrictive than Federal standards", S. REP. No. 101–94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, which was given life in Section 1018 of the OPA, 33 U.S.C. § 2718.[6] *See National Shipping Co. of Saudi Arabia v. Moran Mid–Atlantic Corp.*, 924 F.Supp. 1436, 1448 (E.D.Va.1996), *aff'd*, 122 F.3d 1062 (4th Cir.1997) (table), *cert. denied*, 523 U.S. 1021, 118 S.Ct. 1301, 140 L.Ed.2d 467 (1998). Thus, subsection (c) of the OPA jurisdictional statute by itself does not indicate an intent to prohibit removal, as plaintiffs argue, but merely provides that state and federal claims for removal costs or damages can be brought together in a state forum, rather than requiring plaintiffs to bring their OPA claims exclusively in federal court.

Even if these two jurisdictional provisions could be considered ambiguous, the corresponding legislative history does not support plaintiffs' theory. First, the legislative history concerning jurisdiction does not mention any intent to prevent removal, as would be expected in the face of 28 U.S.C. § 1441(a)'s requirement that an exception to removal be "express." Second, the Senate description of these two sections is remarkably straightforward:

> Appropriate United States district courts are given jurisdiction arising under the Act.

> Appropriate State courts are given jurisdiction over claims under section 102, and final judgments of such courts are valid and enforceable for all purposes of sections 102 and 103.

S. REP. No. 101–94, U.S.Code Cong. & Admin.News 1990, pp. 722, 738. In other words, state courts have concurrent jurisdiction over certain OPA claims, while federal district courts have jurisdiction over all OPA claims (except for challenges to regulations promulgated under OPA, which subsection (a) of the jurisdictional provision assigns to the D.C. Circuit). The Court rejects the plaintiffs' odd reading of this legislative history.

This brings us to plaintiffs' final, and

---

**6.** This section provides in pertinent part:

(a) Preservation of State authorities; Solid Waste Disposal Act

Nothing in this chapter or the Act of March 3, 1851 shall—

(1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to—

(A) the discharge of oil or other pollution by oil within such State; or

(B) any removal activities in connection with such a discharge; or

(2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.

(b) Preservation of State funds

Nothing in this chapter or in section 9509 of Title 26 shall in any way affect, or be construed to affect, the authority of any State—

(1) to establish, or to continue in effect, a fund any purpose of which is to pay for costs or damages arising out of, or directly resulting from, oil pollution or the substantial threat of oil pollution; or

(2) to require any person to contribute to such a fund.

(c) Additional requirements and liabilities; penalties

Nothing in this chapter, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of Title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof—

(1) to impose additional liability or additional requirements; or

(2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law;

relating to the discharge, or substantial threat of a discharge, of oil.

most interesting,[7] argument: that OPA's "saving-to-suitors" clause is an express declaration of Congressional intent to prohibit removal of OPA claims. This argument has its foundation in 28 U.S.C. § 1333 and its interpretive jurisprudence.

28 U.S.C. § 1333 provides that federal district courts shall have "original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled...." "The effect of the saving-to-suitors clause essentially is to provide a plaintiff who has an in personam claim the choice of proceeding in an ordinary civil action in a state or federal court, rather than bringing a libel in admiralty in federal court." 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3672, at 301 (3d ed.1998). *See also* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4–4, at 160 (3d ed.2001) (despite apparent grant of exclusive federal jurisdiction, the "saving clause" is interpreted to reserve to suitors the right of a common law remedy in all cases where the common law is competent to give it, and, since the common law is competent in all *in personam* suits, a plaintiff may elect to proceed in admiralty or to bring an ordinary civil action, either at law in state court or in a federal district court where another basis for federal jurisdiction exists).

■ In *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court held that general maritime claims do not "arise under the Constitution, trea-

ties, or laws of the United States" within the meaning of 28 U.S.C. § 1331. Accordingly, general maritime claims do not provide the basis for federal question jurisdiction and generally cannot be removed, on their own, under the terms of the removal statute. *See* 28 U.S.C. § 1441(b) (providing for removal based on federal question jurisdiction); SCHOENBAUM § 4–5, at 163 & n. 13 (acknowledging apparent contradiction with 28 U.S.C. § 1441(a), but noting that "Nevertheless, the rule has developed that admiralty saving-clause cases properly filed in state court cannot be removed unless admiralty jurisdiction is exclusive"). "Thus, removal in admiralty is limited to (1) claims meeting the test of diversity jurisdiction where none of the defendants properly served is a citizen of the state in which the suit is filed; and (2) claims with an independent jurisdictional basis outside the *Romero* rule." *Id.* at 164–65, 79 S.Ct. 468 (footnotes omitted).

Here, plaintiffs originally filed suit in state court, expressly alleging state court jurisdiction "pursuant to the Savings to Suitors clause of 28 U.S.C. § 1333" (even though they also brought suit against the vessel, which they successfully attached under Louisiana law). Initial Petition ¶ III. Defendants did not allege diversity of jurisdiction in their Notice of Removal, and the First Amending Petition, as written,[8] indicates an absence of complete diversity. Thus, the question becomes whether plaintiffs' OPA claims provide the Court with an independent jurisdictional basis outside the *Romero* rule.

Plaintiffs argue that OPA claims do not provide a basis for federal question jurisdiction because Congress included a "sav-

---

7. The defendants apparently did not find this argument interesting because they did not address it.

8. In the First Amending Petition, plaintiffs added Jack Grubbs, allegedly the pilot of the WESTCHESTER and a Louisiana resident, as a defendant. Defendants have not challenged the propriety of this allegation.

ing-to-suitors" clause in OPA to achieve the same result for OPA claims as would be attained for general maritime claims under the *Romero* rule. The provision in question comes within OPA's "Savings provisions," 33 U.S.C. § 2751. Subsection (e) states:

Admiralty and maritime law

Except as otherwise provided in this chapter, this chapter does not affect—

(1) admiralty and maritime law; or

(2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Plaintiffs argue that, because "saving-to-suitors" clauses are "extremely rare in the United States Code, ... the clear intent of OPA's savings provision ... is that removal is prohibited." Pl's Mem. pp. 8–9.

The Court agrees with plaintiffs that OPA's "saving-to-suitors" language is conspicuous. However, the inclusion of this language instead of an express removal prohibition strikes the Court as a rather elliptical way to achieve a simple result. For example, the Jones Act contains an express removal prohibition: it incorporates the express nonremoval provision of 28 U.S.C. § 1445(a), which provides that "A civil action in any State court against a carrier or its receivers or trustees ... may not be removed to any district court of the United States." This provision, unlike the OPA provision, clearly satisfies 28 U.S.C. § 1441(a)'s requirement that exceptions to the general removal rule be "express" and does not require courts to engage in any further statutory interpretation. Moreover, using a saving-to-suitors clause to prohibit removal would be rather anomalous, since 28 U.S.C. § 1333's saving-to-suitor clause, in and of itself, does not guarantee a nonfederal forum. As the Fifth Circuit stated

in *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (1981):

The "saving to suitors" clause does no more than preserve the right of maritime suitors to pursue nonmaritime remedies. It does not guarantee them a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty.

*See also Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir.1996) (same). Facially, then, it seems unlikely that Congress intended to prohibit removal through the "saving-to-suitors" language of 33 U.S.C. § 2751(e).

Nonetheless, even without an express removal prohibition, admiralty statutory causes of action at times have been found to come within the *Romero* rule because they merely codify traditional admiralty claims. For example, in *Buckley v. Brent Towing Co., Inc.*, 412 F.Supp. 382 (N.D.Miss.1976), the court held that the remedy provided in 33 U.S.C. § 905(b) of the Longshoreman's and Harbor Workers' Compensation Act (as amended in 1972) did not create a new remedy unknown to traditional maritime law but merely codified one traditional remedy while eliminating others. "Accordingly, the maritime negligence referred to in 33 U.S.C. § 905(b) is not a creature of Congress, but of the general maritime law. As such it has no 'arising under' jurisdictional basis and for that reason cannot be removed from state to federal court." *Id.* at 384 (quoting *Giacona v. Capricorn Shipping Co.*, 394 F.Supp. 1189 (S.D.Tex.1975)). However, the *Buckley* decision implied that a claim that touches upon traditional maritime subject matter may nonetheless "arise under" the laws of the United States for purposes of federal question removal where Congress has "establish[ed] ... an

entirely new cause of action". *Id.* (quoting *Giacona*).

The Court finds that OPA establishes an entirely new, federal cause of action for oil spills. First, and most important, this conclusion is based on the text of the statute read as a whole. Although traditional maritime remedies for oil spills pre-date OPA, OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills. *National Shipping*, 924 F.Supp. at 1436. This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies. *See id.* This result is reflected in the first clause of OPA's admiralty and maritime savings provision: *"Except as otherwise provided in this chapter, this chapter does not affect ... admiralty and maritime law...."* (Emphasis added.)

Viewed in this context, the first subsection of the admiralty and maritime savings clause recognizes that certain maritime remedies are preempted by OPA, while others survive. *See Commonwealth of Puerto Rico v. M/V EMILY S,* 1998 WL 938585, 1998 A.M.C. 2726 (D.P.R.1998) (because OPA does not provide for *in rem* remedies, its admiralty and maritime law savings clause preserves the right to a maritime lien for oil pollution). The second subsection recognizes that a surviving maritime remedy does not automatically become a federal claim merely because it touches upon an area of federal concern. In other words, OPA does not completely preempt the field such that any claim arguably arising under OPA is necessarily federal. *Cf. Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (claims falling within the scope of ERISA § 502(a) are "necessarily federal in character," such that they provide a basis for federal question jurisdiction, even if artfully pled as state causes of action). The second subsection does *not* mean that OPA claims are merely codified maritime causes of action that cannot be removed to federal court.

Interpreting OPA as creating federal question claims is also consistent with the text of OPA's jurisdictional provision. As noted above, federal courts are granted jurisdiction over all controversies "arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." This language is consistent with federal question jurisdiction because it uses the "arising under" language of 28 U.S.C. § 1331, expressly obviates the need for diversity jurisdiction under 28 U.S.C. § 1332, and does not invoke "admiralty or maritime jurisdiction" under 28 U.S.C. § 1333. *Cf. DeBello v. Brown & Root Inc.,* 809 F.Supp. 482, 485–86 (E.D.Tex.1992) (the Death on the High Seas Act's reference to suits "in admiralty," 46 App. U.S.C. § 761(a), invokes admiralty jurisdiction and therefore DOHSA claims cannot be removed pursuant to 28 U.S.C. § 1441(b)).

To the extent that any ambiguities in the statutory language remain, the legislative history also supports the view that OPA establishes an entirely new federal cause of action. Referring to the Congressional Record, the court in *Rice v. Harken Exploration Co.,* 89 F.Supp.2d 820, 822 (N.D.Tex.1999), recognized that OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution." Indeed, the Senate Report states that OPA "create[s] a single Federal law providing cleanup authority, penalties, and liability for oil pollution." S. REP. No. 101–94, U.S.Code Cong. & Admin.News 1990, pp. 722, 730. The Senate found that "the Nation need[ed] ... a package of complementary international, national, and State laws that will adequately compensate victims of oil spills, provide

quick, efficient cleanup, minimize damage to fisheries, wildlife and other natural resources and internalize those costs within the oil industry and its transportation sector" to replace the inadequate and "fragmented collection of Federal and State laws" in existence prior to OPA. *Id.* Thus, the legislative history makes clear Congress's desire to create "an entirely new [OPA] cause of action," previously unknown to maritime law.

The legislative history also militates against plaintiffs' position that OPA's admiralty and maritime law savings clause was intended to bar removal. The Conference report indicates that, at the time the proposed legislation reached the Conference, it contained some non-preemption provisions but lacked others. Accordingly, the Conference added the admiralty and maritime law savings clause, "as well as certain other boilerplate savings provisions, including those regarding repealed laws and legislative construction" to make clear that "there is no change in current law unless there is a specific provision to the contrary." H.R. CONF. REP. 101–653 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779. Consistent with this principle, OPA does not "change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States." *Id.* This language indicates that, insofar as OPA does not preempt maritime law, the *Romero* rule is unchanged. Conversely, where OPA does remove an incident from traditional maritime law, jurisdiction is changed.

Even more important, the same legislative history says nothing about prohibiting removal. If Congress did, as plaintiffs argue, intend to take the long way to removal preclusion, one would expect that this intention would at least be expressed in the legislative history. The entire discussion of the admiralty and maritime law

savings clause in H.R. CONF. REP. 101–653, U.S.Code Cong. & Admin.News 1990, pp. 779, 838 is reprinted below:

SEC. 6001. SAVINGS CLAUSE

The Senate amendment has no savings provision regarding admiralty and maritime laws or jurisdiction.

Section 6001 of the House bill clarifies that the House bill does not affect admiralty and maritime law or the jurisdiction of the District Courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases other remedies to which they are otherwise entitled. Article III, clause 2, of the Constitution creates the basis for admiralty and maritime law of the United States. This section is intended to clarify that the House bill does not supersede that law, nor does it change the jurisdiction of the District Courts under section 1333 of title 28, United States Code (the codified section of the Judiciary Act of 1789).

The Conference substitute also adds certain other boilerplate savings provisions, including those regarding repealed laws and legislative construction.

The Conference substitute adopts the House provision with respect to admiralty and maritime laws with an amendment clarifying that the provision was subject to the provisions of the substitute. Section 1002 of the Conference substitute establishes liability notwithstanding any other provision or rule of law, including the Act of March 3, 1851 (46 U.S.C. 183). Therefore, there is no change in current law unless there is a specific provision to the contrary.

It is not the intent of the Conferees to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States. The Conferees wish to promote uniformity regarding these laws.

For all of these reasons, the Court concludes that OPA claims arise under the "Constitution, treaties or laws of the United States" and are removable to federal court pursuant to 28 U.S.C. § 1441(b). The defendants' removal was therefore proper.

3. *Plaintiffs Remaining Arguments against Removal*

Because their OPA claim provides an independent jurisdictional basis outside the *Romero* rule, the Court need not consider plaintiffs' remaining arguments regarding the propriety of removing their general maritime claims.

## C. *CONCLUSION*

The Court concludes that defendants properly removed plaintiffs' action pursuant to 28 U.S.C. §§ 1441(b) and 1446(b). Plaintiffs' OPA claim provides the basis for federal question jurisdiction and defendants filed their Notice of Removal within 30 days of initial receipt of the initial pleading. Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Remand is DENIED.