**UNITED STATES of America, Plaintiff,**

**v.**

**J.R. NELSON VESSEL, LTD., and Sigmund Batruk, a.k.a., Sigmund Bacruk and/or Sigmund Bartruk, in personam, and F/V J.R. Nelson, Official Number D560966, its engines, tackle, apparel, appurtenances, etc., in rem, Defendants.**

**No. 94 CV 5695 (NG) (ARL).**

United States District Court,
E.D. New York.

Feb. 24, 1998.

Edward F. Kenny, Asst. U.S. Atty., New York City, for plaintiff.

Frederick C. Hayes, New York City, for defendants.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

This is an action brought by the United States for recovery of costs for cleaning up an oil spill and for a declaratory judgment that the defendants are responsible for the removal from a harbor of a vessel that has been determined to be a hazard to naviga-

tion. The United States has moved for summary judgment. For the reasons stated below, the motion will be granted.

## FACTS

The following facts are undisputed. The F/V J.R. Nelson ("the Nelson") is a 112.7 foot, 276 gross ton fishing vessel. The Nelson was owned and operated by J.R. Nelson, Ltd., a New York corporation formed in 1987 and dissolved in 1992, of which Sigmund Batruk was the sole officer and shareholder.

During 1992 and 1993, the Nelson was moored in Greenport Harbor, New York, at a pier owned by the Greenport Yacht and Shipbuilding Co., Inc. During a severe storm on December 13, 1992, the Nelson partially sank while at the pier. In response to a report of the sinking received that day, the Coast Guard Port Safety Detachment for Long Island Sound dispatched Petty Officer Michael MacDonald to the scene. Officer MacDonald filed a report that states, *inter alia,* that he observed that the Nelson was leaking oil.

On the following day, Officer MacDonald telephoned Batruk to inform him of the sinking. The call was taken by Batruk's wife, who informed MacDonald that, due to her husband's ill health, all matters concerning— the Nelson should be referred to Batruk's attorney, Frederick Hayes, Esq., who is also representing the defendants in the present action. That same day, December 14, 1992, Officer MacDonald faxed Hayes and Mrs. Batruk a "Notice of Federal Direction," which informed Batruk of his responsibility for costs relating to cleaning up any oil spilled from the Nelson. Upon receipt of the notice, Hayes called the Coast Guard to inform them that Batruk could not assume responsibility for clean-up costs because of financial hardship.

Also on December 14, 1992, the Coast Guard hired Miller Environmental Group ("MEG") to conduct clean-up procedures. MEG initially deployed divers in an unsuccessful attempt to raise the Nelson. The divers reported that water was entering the vessel and recommended that the vessel's compartments be sealed. MEG's clean-up

efforts continued through March 26, 1993, during which time approximately 500 gallons of oil were recovered from inside the Nelson and the waters surrounding it. Water samples analyzed by the U.S. Coast Guard Marine Safety Laboratory determined that oily water from the Nelson's bilge area matched samples of oily water taken from the area surrounding the Nelson. In addition, a Coast Guard investigatory report, dated March 18, 1993, determined the Nelson's sinking had been the result of holes in the vessel's starboard side that had been caused by the pounding of the unattended vessel against its mooring during a storm.

The Coast Guard sent Batruk two bills relating to the clean-up, which included MEG's charges as well as the costs of Coast Guard monitoring of the spill site. The first bill, dated March 22, 1993, totaled $51,665.92 and the second bill, dated November 22, 1993, totaled $7,051.05. The total amount billed, less certain of MEG's charges totaling $4,987.06 that were later disallowed by the Coast Guard, amounts to $53,729.91. To date, Batruk has made no payment.

In a letter, dated January 5, 1993, the Department of the Army, New York District, Corps of Engineers, informed Batruk that the Nelson constituted a hazard to navigation and directed him to immediately remove the vessel from its mooring in Greenport Harbor. To date, the Nelson has not been removed.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is the movant's burden to demonstrate the absence of any genuine issue of material fact, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142

(1970), which are facts whose resolution would "affect the outcome of the suit under governing law." Anderson v. Liberty, Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[1] Demonstration of the absence of a material fact is defeated by the non-movant's presentation of sufficient evidence to establish "that a reasonable jury could return a verdict for the non-moving party." Id. In making a determination as to whether a genuine dispute as to a material fact exists, "all justifiable inferences" from the factual record before the court are to be drawn in favor of the non-movant. Id. at 255.

### A. Oil Spill Clean-Up Costs.

The United States seeks to recover the costs of cleaning up the oil spill pursuant to the Oil Pollution Liability and Compensation Act of 1990, 33 U.S.C. §§ 2701–2715 ("OPA"). Section 2702(a) of OPA states that "each responsible party for a vessel or a facility from which oil is discharged ... is liable for the retrieval costs ... that result from such incident." Section 2701(32)(A) defines a "responsible party" with respect to a vessel that has spilled oil as "any person owning, operating, or demise chartering the vessel." It is undisputed that Batruk is a responsible party with respect to the Nelson. The defendants, however, assert that material issues of fact as to OPA liability exist because 1) any damage sustained by the Nelson that caused it to leak oil was the result of third-party negligence and 2) the United States has not demonstrated that no issue of fact exists as to whether the Nelson was the source of the oil spilled in Greenport Harbor. Both of these arguments are without merit.

■ As to the first argument, the defendants assert that, beginning in 1988, and throughout the time relevant to this action, "the Nelson was left in the custody and control of Stephen Clarke, owner and operator of the Greenport Yacht & Shipbuilding

1. In order to assist the court with the determination as to whether the moving party has met its burden in this regard, Local Civil Rule 56.1 provides that the movant shall submit a "short and concise statement of the material facts as to which the moving party contends there is no

genuine issue to be tried" and that the non-movant submit a "short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." While the United States has complied with the rule, the defendants have submitted no statement.

Company, for repairs and storage." Defts.' Mem. at 1. Having accepted payment for these services, the defendants assert, Clarke made himself a bailee who thereby accepted a duty of care with respect to the condition of the Nelson. A breach of this duty of care would make Clarke at least partially liable for any damages caused by the oil spill.

This defense to liability, which is not set forth in the defendants' answer, and which is made despite the failure to implead Clarke and his company, fails as a matter of law. A bailment is a contractual arrangement. *See U.S. v. $79,000 in Acct. No. 2168050/6749900 at the Bank of New York*, 1996 WL 648934 at *5 (S.D.N.Y. Nov.7, 1996); 9 N.Y.Jur.2d, *Bailments and Chattel Leases*, § 1 at 9 (1980). OPA, however, while allowing third-party negligence to serve as a complete defense, explicitly excludes from that allowance the case of "a third party whose act or omission occurs in connection with *any contractual relationship* with the responsible party," 33 U.S.C. § 2703(a)(3) (emphasis supplied); *see also Intern. Marine Carriers v. Oil Spill Liability Trust*, 903 F.Supp. 1097, 1106 (S.D.Tex.1994) ("OPA section 2703 third-party defense is intended to prevent otherwise responsible parties from avoiding liability by pointing to the conduct of foreseeable third parties"). Thus, the defendants cannot avoid summary judgment by claiming that an issue of fact exists as to the purported negligence of Clarke and his company.

■ The defendants' second argument—that the United States has not demonstrated that Nelson was the source of the spilled oil—consists of insubstantial criticisms of the evidence proffered by the United States in support of summary judgment. Thus, the defendants assert that the water sample analysis performed by the Coast Guard Marine Safety Laboratory "states at length that no reliable conclusion was possible to identify the source of the spilled oil." Defts.' Mem. at 2. This is simply incorrect. The report details the results of chemical analyses performed upon nine water samples, three of which were taken from the Nelson's bilge area. The report states that one of the samples taken from the Nelson and samples taken from the oil spill area were "derived

from a common source." The two other Nelson samples "appear to be related" to the spill area samples, but the report states that these cannot conclusively be attributed to a common source. On the basis of these results, the Coast Guard chemist who performed the analyses declares that "the samples of oil spilled in Greenport Harbor match the samples of oil taken from the F/V J.R. Nelson." Hendrick Aff. at ¶ 4. The defendants produce no evidence of their own—such as evidence demonstrating another possible source of the spilled oil—that establishes any issue of fact as to the source of the oil.

The defendants have also produced two brief reports from divers employed by MEG, dated December 15, 1992 and December 17, 1992, which they claim refute the assertion that the Nelson's hull was damaged. The first report, however, merely states that "there was no apparent damage to hull where I was able to inspect." Defts.' Exh. D. This statement is not inconsistent with Officer MacDonald's assertion that, on December 14, 1992, "the vessel's damage below the waterline could not be determined." MacDonald Aff. at ¶ 9. The second diver's report is silent as to hull damage, but does state that "you could see long seams of oil come from the vessel as the tide went out." Defts.' Exh. E. Taken together then, these two reports actually support a grant of summary judgment.

The defendants make no other effort to refute the body of evidence proffered by the United States in support of summary judgment, which, in addition to the evidence cited above, includes a declaration from the Harbor Master of Greenport Harbor, who also states that he saw oil emanating from the Nelson, Swensen Aff. at ¶ 3, and a letter of the defendants' own counsel to Mr. Clarke, dated March 3, 1993, which acknowledges that "other ships berthed at the pier opposite the Nelson received very little, if any damage" from the December 12, 1992 storm. Kenny Decl., Exh. 11. This acknowledgment is consistent with a finding that no other vessel but the Nelson was the source of the spilled oil. Taken together, the evidence proffered by the United States abundantly

supports a grant of summary judgment as to the defendants' liability for the costs of the clean-up of the spilled oil.[2]

Beyond purely speculative assertions that the clean-up could have been more cheaply undertaken, the defendants make no showing that the recovery sought by the United States is unreasonable. I therefore find that the United States is entitled to the full amount of the asserted clean-up costs.

### B. Costs of Vessel Removal.

The United States also seeks a declaratory judgment, pursuant to the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. §§ 401–415, that the defendants are liable for the costs of the removal of the Nelson from Greenport Harbor. The defendants make no effort to oppose this application. Thus, summary judgment is appropriate as to this claim as well.

### CONCLUSION

The motion of the United States for summary judgment is GRANTED in full. The Clerk of Court is directed to enter judgment in the amount of $53,729.91, with interest pursuant to 33 U.S.C. § 2705. The Clerk of Court is further directed to enter a declaratory judgment to the effect that the defendants are liable for the costs of removing the Nelson from Greenport Harbor.

**SO ORDERED.**

---

2. The defendants also make much of the severity of the storm that damaged the Nelson. While OPA does allow that "an act of God," is a complete defense to liability, 33 U.S.C. § 2703(a)(1), the Act defines the term as "an unanticipated grave natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character...." 33 U.S.C. § 2701(1). The defendants make no effort to establish that the storm was of such a magnitude. See *U.S. v. Barrier* *Indus., Inc.*, 991 F.Supp. 678 (S.D.N.Y. Jan.27, 1998) (in case decided under analogous federal environmental statute, "unprecedented cold spell" was not act of God). The defendants also complain about the inclusion of the costs of the Coast Guard's monitoring of the clean-up as an element of damages, but they are clearly recoverable under OPA. See *U.S. v. Conoco, Inc.*, 916 F.Supp. 581 (E.D.La.1996).