UNITED STATES of America,
Plaintiff–Appellee,

v.

HYUNDAI MERCHANT MARINE CO.,
LTD.; Britannia Steam Ship Insur-
ance Association, Ltd., Defendants–
Appellants.

Nos. 97–35538, 97–35820.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1998.

Filed April 20, 1999.

Dawn M. Schock, Michael H. Woodell, Keesal, Young & Logan, Long Beach, California, for the defendants-appellants.

R. Michael Underhall, United States Department of Justice, Torts Branch, Civil Division, San Francisco, California, for the plaintiff-appellee.

Before: CANBY and TASHIMA, Circuit Judges, and EZRA,[1] Chief District Judge.

CANBY, Circuit Judge:

Hyundai Merchant Marine Co. appeals from a $1,702,553.51 damage award to the United States pursuant to the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2761. The OPA provides that a party responsible for a vessel that discharges or threatens to discharge oil into navigable waters is liable for "removal costs and damages," id. § 2702(a), including removal costs incurred by the United States. Id. § 2701(b)(A). This appeal concerns the permissible scope of the United States' recovery under the OPA for its response to a private party's threatened (and to a limited degree, actual) oil spill, a question of first impression in this and all circuits. With but one exception, we agree with the district court that the United States is entitled to recover the amounts it claimed.

## I. Facts

On October 2, 1991, the bulk carrier M/V Hyundai No. 12 ran aground in the Shumagin Islands of Alaska, an environmentally sensitive area approximately 260 miles west of Kodiak. The freighter was carrying almost 200,000 gallons of bunker oil in its bottom fuel tanks. This type of oil has a molasses-like consistency and must be heated to be pumped. It evaporates slowly, if at all, and disperses poorly when exposed to the elements.

---

1. The Honorable David A. Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

Hyundai's crew soon discovered that each of the ship's tanks was fractured and open to the sea. On the fifth and sixth days after the grounding, a gale force storm twisted and swung the ship more than 100 degrees around the rocks on which it was perched, leading to oil leakage visible in a sheen over 2000 feet long. This oil spill threatened several species of wildlife.

The Coast Guard responded to the initial emergency at once. For eleven days immediately following the grounding, it stood ready with men and equipment to contain a major spill and monitored Hyundai's efforts to free the ship. Hyundai, however, performed the actual work of containing the spill and freeing the ship, at great expense to itself. It consulted with the Coast Guard, and the Coast Guard approved its plan of operation. Fortunately, only minor spillage occurred before Hyundai was able to free the ship and tow it to repair docks.

The United States sued under the OPA to recover its costs from Hyundai for the Coast Guard's response to the emergency. The district court awarded the United States $1,702,553.51. Hyundai and its insurer, although recognizing a duty to reimburse the United States for certain limited costs, appeal several aspects of that award. The crux of Hyundai's argument is that a responsible party that spends millions of dollars in a successful prevention and cleanup operation should not have to reimburse the United States for efforts that were duplicative and unnecessary. In this vein, Hyundai contends that (1) the United States was not entitled to recover monitoring costs; (2) only "necessary" costs are recoverable; and (3) "base" costs are not recoverable. Hyundai also argues that (4) penalties should not have been assessed under the Debt Collection Act, 31 U.S.C. § 3717; (5) the United States was not entitled to attorneys' fees; and (6) the Coast Guard improperly applied a later-imposed rate schedule when calculating its costs. We agree with Hyundai that the Debt Collection Act and its penalties do not apply in this case. We reject, however, all of Hyundai's remaining contentions.

## II. Costs of Monitoring

Hyundai contends that the OPA does not allow the United States to recover the Coast Guard's cost of monitoring Hyundai's salvage operation, as opposed to the cost of actual removal of oil. According to Hyundai, costs of monitoring do not constitute "removal costs." We reject Hyundai's interpretation of the statute; the definition of "removal" costs under 33 U.S.C. § 2702(a) includes monitoring costs.

OPA § 2702(a) provides:

[E]ach responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters ... *is liable for the removal costs* and damages specified in subsection (b) that result from such incident.

(Emphasis added.)

Subsection (b) then provides:

The removal costs referred to in subsection (a) of this section are-

(A) all removal costs incurred by the United States ... under subsection (c), (d), (e), or (1) of section 1321 of this title ...

33 U.S.C. § 2702(b). The reference to section 1321 is to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1321(c)-(e) and (1). Section 1321(c) of that Act is of particular relevance here. It directs the President to "ensure effective and immediate removal of discharge, and mitigation or prevention of a substantial threat of discharge, of oil" into United States waters. 33 U.S.C. § 1321(c)(1)(A). It further provides that, in carrying out those duties, the President may:

(i) remove or arrange for the removal of a discharge, and mitigate or prevent a substantial threat of a discharge, at any time;

(ii) *direct or monitor* all Federal, State, and private actions to remove a discharge....

33 U.S.C. § 1321(c)(1)(B)(i),(ii) (emphasis added). Finally, subsection (c) provides that, when a "discharge or substantial threat of a discharge" of oil is of a size or character to be a substantial threat to the health or welfare of the United States (including a threat to fish or wildlife), then:

The President shall direct all Federal, State, and private actions to remove the discharge or to mitigate or prevent the threat of the discharge.

33 U.S.C. § 1321(c)(2)(A).

As we read these cross-referenced provisions of the OPA and the Federal Water Pollution Control Act, they entitle the United States to recover the costs incurred by the Coast Guard in monitoring Hyundai's removal of its stranded and leaking vessel holding 200,000 gallons of bunker fuel. The Coast Guard's actions were an attempt to "mitigate or prevent a substantial threat of a discharge," § 1321(c)(1)(B), it was "monitoring ... private action to remove a discharge," § 1321(c)(1)(B)(ii), and its monitoring was a means of "direct[ing] private actions to remove the discharge or to mitigate or prevent the threat of discharge" of oil, § 1321(c)(2)(A).[2]

In addition to the cross-references to the Federal Water Pollution Control Act, the general definition section of the OPA supports our conclusion. That section defines "removal costs" as:

the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the *costs to prevent, minimize, or mitigate* oil pollution from such an incident.

33 U.S.C. § 2701(31) (emphasis added). We reject Hyundai's contention that this definition excludes monitoring; the Coast Guard's monitoring activities are part of its effort to prevent or minimize a threatened oil discharge. Hyundai's reliance on the narrower definition of "removal" in § 2701(30) is of no avail; that definition does not include prevention. The broader definition of "costs of removal" in § 2701(32) includes costs of prevention. Hyundai's emphasis on actual removal unduly minimizes the importance of the Coast Guard's emergency stand-by operation, which qualifies as an act of "prevention," the cost of which is clearly recoverable under the terms of the definition as it applies to the liability imposed by § 2702.[3]

Finally, Hyundai challenges the assessment of monitoring costs on the basis of *National Cable Television Ass'n. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). There, the Court reminded Congress that it may not delegate away its taxing power to an executive agency, *see id.* at 342, 94 S.Ct. 1146. *See also Union Pacific R.R. v. Public Util.*

---

**2.** We reject Hyundai's contention that denial of reimbursement for monitoring costs is supported by H.R. Conf. Rep. No. 101–653, 101st Cong., 2d Sess. 145 (1990). That report states:

With respect to removal of any discharge or mitigation or prevention of any substantial threat of a discharge, the President may assume responsibility and costs of these actions subject to reimbursement from the responsible party; (i.e., "federalize the effort"); direct or monitor all Federal, State and private actions; and remove and, if necessary, destroy a vessel discharging or threatening to discharge.

Hyundai contends that "subject to reimbursement" applies only to the first clause. We do not read the statement that way; it is more reasonable to apply the clause to the entire sentence. It is doubtful, for example, that Congress intended not to permit reimbursement for the removal or destruction of a vessel by the United States.

**3.** We reject Hyundai's contention that the explicit reference to removal and monitoring costs in § 2712(a)(1) indicates that removal cost ordinarily does not include monitoring cost. Section 2712(a)(1) authorizes use of the Oil Spill Liability Trust Fund for "the payment of removal costs, including the costs of monitoring removal actions." This section does not refer to removal and monitoring as separate activities; indeed the term "including" suggests that monitoring cost is a removal cost.

*Comm'n,* 899 F.2d 854, 860 (9th Cir.1990). These cases do not apply here. The OPA authorizes recovery of costs, not taxation. Cf. *United States v. Lowe,* 118 F.3d 399, 401 (5th Cir.1997) (recovery of CERCLA clean up costs is neither a fee nor a tax).

### III. "Necessary" Costs

■ Hyundai contends that the United States may not recover costs unless the district court determines they were "necessary" to mitigate or prevent a discharge of oil. It bases its argument on § 2701(30), which defines "remove" and "removal" for the OPA as follows:

> "Remove" or "removal" means containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions *as may be necessary* to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches.

(Emphasis added.) Hyundai concludes that actions other than actual removal must be deemed "necessary" before they are compensable. We reject this contention.

First, the words "as may be necessary" do not purport to be a limitation on reimbursement. They are more naturally read as an acknowledgment of executive discretion in determining the steps a particular situation requires. In any event, as we explained above, the relevant term in § 2702(a) is "removal costs," not "removal." The former is defined at subsection (31) as the "costs to prevent, minimize, or mitigate oil pollution." The word "necessary" is nowhere to be found in this more pertinent definition.

Finally, if Congress were to establish a standard for establishing which actions of the Coast Guard were reimbursable, one would expect to find it in the liability por-

tion of the statute, not in the definitions section. The liability section, § 2702(b), specifies what removal costs are recoverable under § 2702(a). It defines them as "*all* removal costs incurred by the United States." (Emphasis added.) Nothing in the liability section limits the United States to recovery of "necessary" removal costs.

Hyundai argues that the United States should not have a blank check permitting it to undertake all kinds of unnecessary and unreasonable actions at Hyundai's expense. It is worth pointing out in passing, however, that many of the actions that Hyundai now regards as unreasonable or unnecessary appear so, if at all, only by hindsight. The grounding of the Hyundai No. 12 contained the seeds of a major ecological disaster. In the circumstances, it was only prudent for the government to rush personnel and equipment to the scene and maintain them there until the threat was over. Be that as it may, the OPA does not restrict the recovery of the United States to costs that were prudent, or necessary, or reasonable.[4]

■ Recovery under the OPA is not wholly unlimited, however. The government concedes that the general standard of the Administrative Procedure Act applies to its actions in seeking to prevent or contain an oil-spill disaster: the United States may recover its costs unless its actions were arbitrary or capricious. *See* 5 U.S.C. § 706(2)(A). The district court held that the actions of the United States for which it awarded recovery were not arbitrary or capricious. Hyundai does not challenge these rulings. The OPA does not authorize the imposition of any higher standard.

---

4. Under the Federal Water Pollution Control Act, incorporated in part by OPA § 2702(b), the government has been held to be entitled to recover *all* of its costs of removal, with no requirement of necessity or reasonableness. *See Puerto Rico v. SS ZOE COLOCOTRONI,*

456 F.Supp. 1327, 1347 (D.P.R.1978), *aff'd in part, vacated in part on other grounds,* 628 F.2d 652 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *Union Petroleum Corp. v. United States,* 228 Ct.Cl. 54, 651 F.2d 734, 744 (1981).

## IV. Base Costs

■ Hyundai contends that the Coast Guard's base costs, as opposed to its incremental costs, are not recoverable. Base costs are those costs, such as the salaries of personnel, that the Coast Guard would have incurred even were it not responding to the Hyundai No. 12's distress. Hyundai relies on the OPA's language to the effect that the government may recover costs that "result from" an oil spill. 33 U.S.C. § 2702(a). It thus contends that paying the personnel who respond to an incident, for example, is not a cost that "results from" the incident.

We reject this interpretation of the OPA. The Coast Guard's allocable base costs did "result from" the incident. If personnel must be sent to monitor a potential spill, they must be paid. The fact that, if this near-disaster had not occurred, the personnel would have been paid to perform some other task does not alter the reality that the mishap did occur and Coast Guard personnel were paid to monitor a potential spill. While they were monitoring operations for the Hyundai No. 12, Coast Guard personnel could not carry out their other duties, such as safety inspections and drug interdiction. The same point may be made with regard to other assets employed by the Coast Guard in responding to this accident. Base costs represent real costs to the United States and are recoverable to the extent they are allocable to a response to an oil spill. Nothing in the OPA provides to the contrary.

## V. Debt Collection Act Penalties

■ The district court awarded the United States interest prescribed by the OPA and penalties prescribed by the Debt Collection Act, 31 U.S.C. § 3717. Hyundai contends that when a statutory cause of action sets its own rate of interest, the Debt Collection Act does not apply. We agree.

It is undisputed that the OPA provides for interest, but not penalties. 33 U.S.C. § 2705. On the other hand, the Debt Collection Act provides for both interest and penalties on a claim due the United States, 31 U.S.C. § 3717(a)(1),(e), but it also specifies that the section containing those provisions "does not apply if a statute ... explicitly fixes the interest or charges." *Id.*, § 3717(g)(1) (emphasis added). We apply as written the disjunctive "interest or charges." Because the OPA fixes interest, § 3717 "does not apply" and neither interest nor penalties may be collected under it. We therefore reverse this portion of the district court's award, and remand for modification of the judgment accordingly.

## VI. Attorneys' Fees

■ Funds recovered for removal costs are paid to the Oil Spill Liability Trust Fund, which is available to the President for the payment of removal costs. *See* 33 U.S.C. §§ 2706(f), 2712(a)(1). Fees were awarded here pursuant to § 2715(c), which provides in relevant part:

> At the request of the Secretary, the Attorney General shall commence an action on behalf of the Fund to recover any compensation paid by the Fund to any claimant pursuant to this chapter, and all costs incurred by the Fund by reason of the claim, including ... attorney's fees.

Although Hyundai does not dispute that the recovery in this case will be paid into the Fund, it contends that the government cannot recover fees because it is not clear that the Fund itself is suing as a subrogee. Hyundai latches onto the phrase "compensation paid by the Fund," arguing that no attorneys' fees are due to the United States unless the Coast Guard first was compensated by the fund for its removal costs.

The Coast Guard and the Fund are both part of the federal government. This action is necessarily brought on behalf of the Fund because the recovery will go to the Fund. It was clearly Congress's purpose that the United States be reimbursed its attorneys' fees when it must sue for such a recovery. That purpose would be frustrat-

ed if recovery of fees was defeated by the happenstance that, as a matter of accounting, the Fund paid for the removal costs after, rather than before, the claim against the responsible party was litigated. The district court did not misread the statute in awarding the United States attorneys' fees.

## VII. The Rate Schedule

 The Coast Guard first billed Hyundai pursuant to Commandant Instruction 7310.1D, but later applied the higher rates of Commandant Instruction 7310.1E. The government asserts that Instruction E superseded Instruction D on July 13, 1991, over two months before the Hyundai No. 12's grounding on October 2.

Instruction E is stamped July 13, 1991, and it indicates that it supersedes Instruction D. Hyundai points to § 4(a) of Instruction E, which states that "[t]he enclosed rates are effective upon receipt." Hyundai contends that there is no proof that Instruction E actually was received before the Hyundai No. 12 ran aground.

The Coast Guard argues that the routing block and matrix at the bottom of the first page of Instruction E proves that it was sent to the Juneau Coast Guard Station (which responded to the Hyundai No. 12 accident) on or about July 13. This documentation was sufficient to support the district court's ruling that Instruction E was in effect by the time of the grounding of Hyundai No. 12. *Cf. In re Bucknum*, 951 F.2d 204, 206 (9th Cir.1990) (properly addressed and dispatched mail is presumed to be delivered).

## VIII. Conclusion

The district court did not err in awarding the United States its removal costs, including both incremental and base costs of monitoring the threatened and actual oil spill of the Hyundai No. 12, calculated in accord with Instruction E. The district court also properly awarded the United States its attorneys' fees. The district court did err, however, in assessing penalties under the Debt Collection Act. We therefore affirm all of the award except the penalties under the Debt Collection Act, which we reverse. The matter is remanded to the district court for correction of its judgment in that respect.

The United States is awarded its costs on appeal.

In No. 97–35820, the district court's order awarding attorneys' fees is **AFFIRMED.**

In No. 97–35538, the judgment is **AFFIRMED in part; REVERSED in part; and REMANDED.**