UNITED STATES of America,
Plaintiff,

v.

George MIZHIR d/b/a/ Mizhir
Oil Company, Defendant.

No. Civ.A. 98–40093–NMG.

United States District Court,
D. Massachusetts.

June 28, 2000.

Anita Johnson, U.S. Attorney's Office, Boston, MA, for Plaintiff.

Joseph E. Mizhir, Law Offices of Robert H. D'Auria, Bedford, MA, for Defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The United States brings this action for reimbursement of funds expended by the Oil Spill Liability Trust Fund for the cleanup of an oil spill allegedly caused by the defendant, George Mizhir d/b/a Mizhir Oil Co.("Mizhir"). Pending before this Court are the motion for summary judgment filed by the United States (Docket No. 11) and the cross motion for summary judgment filed by Mizhir (Docket No. 14).

### I. Background

Mizhir lives and operated an oil delivery business in Winchendon, Massachusetts. On December 20, 1994, he took his oil truck to be serviced at Bergevin's Enterprises, Inc. of Keene, New Hampshire ("Bergevin's"). Bergevin's service records indicate that a mechanic inspected the truck and told Mizhir the brakes were "unsafe" and "not to drive truck."

The following day, Mizhir crashed his oil delivery truck into a house in Marlborough, New Hampshire causing a spill of 3,000 gallons of No. 2 fuel oil into the house and surrounding area. That area includes the Minnewawa Brook, which flows into the Ashuelot River. Mizhir made no attempt to remove the oil himself.

On the day after the accident, the homeowner's insurance company retained Clean Harbors Environmental Services, Inc. ("Clean Harbors") to provide emergency oil removal from the house. The same day, the New Hampshire Department of

Environmental Services notified the Environmental Protection Agency ("EPA") of the spill. An EPA coordinator, who arrived at the scene the following day, observed oil seeping into the Minnewawa Brook. Because Mizhir made no effort to remove the oil, EPA notified the U.S. Coast Guard to secure immediate funding for the cleanup and contracted with Clean Harbors to remove the oil from the brook.[1]

All phases of the cleanup were completed on August 4, 1995. The total cost of the cleanup was $242,587, including the EPA contract costs of $209,861 charged by Clean Harbors, $6,067 for EPA's supervisory costs, $20,759 for the cleanup of the house and interest.[2] The homeowner's insurance company arranged for the cleanup of the house but later disclaimed liability. The government sent invoices to the defendant, but he failed to pay any portion of the cleanup costs. The government filed the instant lawsuit and thereafter the pending motion for summary judgment to be reimbursed for removal costs.

## II. The Oil Pollution Act

The Oil Pollution Act, 33 U.S.C. § 2701–61 ("OPA"), provides that

... each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon navigable waters or adjoining shorelines ... is liable for the removal costs ... that result from such incident.

33 U.S.C. § 2702(a). The "responsible party" in the context of onshore facilities like a motor vehicle is defined as the person owning the facility from which oil discharged. 33 U.S.C. § 2701(32)(B). "Facility", in turn, is defined as any motor vehicle used for, *inter alia*, transporting oil. 33 U.S.C. § 2701(9). "Discharge" is

defined as "any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying or dumping." 33 U.S.C. § 2701(7).

■ The OPA defines "navigable waters" as "the waters of the United States ..." 33 U.S.C. § 2701(21). The government asserts that "waters of the United States" describes, in addition to what is obviously navigable, all waters and wetlands that are not navigable or even directly connected to navigable water. It cites two cases, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132–39, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) and *Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 964–65 (7th Cir.1994), both of which describe the term "waters of the United States" as used in the Clean Water Act, under such broad terms. No cases address directly the term "waters of the United States" as used in the OPA, but EPA (the agency charged with enforcing the OPA) defines the term as including

intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce.

40 C.F.R. § 230.3(s)(3). Because the same language has been interpreted under the Clean Water Act and the EPA considers that term encompasses all waters, this Court concludes that "waters of the United States" as used in the OPA means all waters and wetlands, not necessarily navigable waters.[3] In any event, Mizhir does not challenge the construction of "navigable waters".

---

**1.** The Coast Guard administers the Oil Spill Liability Trust Fund which pays the costs of oil spill cleanups before reimbursement is sought.

**2.** All amounts rounded to the nearest dollar.

**3.** There is some evidence that the OPA grew out of the Clean Water Act and that, therefore, Congress intended to incorporate the same term in both Acts. *See Complaint of MetLife Capital Corp. v. M/V EMILY S.,* 132 F.3d 818, 820 (1st Cir.1997).

The OPA requires the United States to remove oil spills or to oversee the removal by others. "Removal" is defined as "containment and removal of oil or a hazardous substance from water ... or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare ..." 33 U.S.C. § 2701(30). The responsible party is liable for all removal costs. 33 U.S.C. § 2702. The United States is also entitled to recover its costs in directing and monitoring all actions to remove a discharge, *United States v. Hyundai Merchant Marine Co., Ltd.*, 172 F.3d 1187, 1189 (9th Cir.1999), and interest on unpaid removal costs. 33 U.S.C. § 2705. Those removal costs may also include attorneys' fees incurred to recover the money expended by the Oil Spill Liability Fund from the responsible party. *Hyundai Merchant Marine*, 172 F.3d at 1192–93.

With respect to logistics, the government usually pays expenses out of the Oil Spill Liability Trust Fund and, if the responsible party has not paid for or reimbursed the government, it may proceed against that party in a District Court "in which the discharge or injury or damages occurred or where the defendant resides ..." 33 U.S.C. § 2717(b). Absent any defense, the OPA imposes strict liability upon the responsible party for oil removal costs. *Complaint of MetLife Capital Corp. v. M/V EMILY S.*, 132 F.3d 818, 820 (1st Cir.1997). The OPA affords three defenses to such a claim, to wit: 1) an act of God, 2) an act of war or 3) an act or omission of a third party (with exceptions). 33 U.S.C. § 2703(a).

## III. The Government's Motion for Summary Judgment

### A. *Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

### B. *Analysis*

The government asserts that this is a straightforward case in that 1) the defendant was both the operator and owner of the "facility" from which the oil was "discharged" and 2) Mizhir admittedly took no action to clean up the oil spill. Indeed Mizhir refused to accept written notification of the federal interest in the spill and did not render payment when presented with invoices for the cleanup.

Only after determining that Mizhir would undertake no cleanup action, did the EPA assume the task of oil removal. It contracted with Clean Harbors to remove all of the discharged oil and the U.S. Coast Guard, through the Oil Spill Liability fund, paid for all cleanup costs. Under the

OPA, the government is entitled to reimbursement of those costs.

Mizhir asserts two defenses to the government's claim: 1) the oil discharge was the result of the act or omission of a third party and 2) the instant action was filed after the running of the applicable statute of limitations.

The government responds to both defenses that, because Mizhir did not raise these defenses earlier, he has waived them. Fed.R.Civ.P. 8(c) requires that a defense based on the expiration of time under the statute of limitations and any other affirmative defense be raised in the pleading responding to the complaint. Failure to do so is construed as a waiver of any affirmative defense. *Wolf v. Reliance Standard Life Ins. Co.,* 71 F.3d 444, 449 (1st Cir.1995); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 15 F.3d 1222, 1226 (1st Cir.1994); *Federal Deposit Ins. Co. v. Ramirez-Rivera,* 869 F.2d 624, 626 (1st Cir.1989).

The Answer, however, clearly states the affirmative defenses of the statute of limitations and another party's fault, which this Court interprets as an invocation of the third party defense afforded by the OPA.

### 1. *Statute of Limitations*

■ The OPA provides that an action for recovery of removal costs "must be commenced within 3 years after completion of the removal action." 33 U.S.C. § 2717(f)(2). The complaint in this case was filed on May 22, 1998.

Mizhir asserts that the removal action was completed on May 20, 1995, but the invoices from the cleanup clearly show that work was performed as late as August 4, 1995. Mizhir argues that 90% of the oil removal was completed before May 20 and that any action taken after that time was not part of the removal action.

By statute the government may recover all "removal costs" including 1) the cost of "containment and removal of oil or a haz-

ardous substance from water ... or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare ..." and 2) costs of directing and monitoring all actions to remove a discharge including monitoring activities. 33 U.S.C. §§ 2701(30) and 2702; *United States v. Hyundai Merchant Marine Co.,* 172 F.3d 1187, 1189 (9th Cir. 1999).

Clean Harbors, the company retained to perform the work, conducted cleanup work on seven occasions after May 22, 1995 (three years prior to filing) and all work was completed on August 4, 1995, well within the three-year statute of limitations period. Mizhir's argument that work was complete by May 20, 1995 is groundless. Even though the date upon which removal work was completed is a question of fact, no reasonable jury could find that the government filed this action more than three years after the completion of the oil removal.

### 2. *Third Party at Fault*

■ Mizhir also claims there is a third person at fault for the accident thus exonerating him. The relevant portion of Section 2703(a) of Title 33 provides:

A responsible party is not liable for removal costs or damages ... if the responsible party establishes, by a preponderance of the evidence, that the discharge ... of oil and the resulting damages or removal costs were caused solely by ...

(3) an act or omission of a third party, other than an employee or agent of the responsible party or a third party whose act or omission occurs in connection with any contractual relationship with the responsible party ... if the responsible party establishes, by a preponderance of the evidence, that the responsible party—

(A) exercised due care with respect to the oil concerned, taking into consideration the characteristics of the oil

and in light of all relevant facts and circumstances; and

(B) took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions ...

Thus, if the oil discharge and the resulting damages were caused solely by an act or omission of a third party and the responsible party was not himself negligent, it is a complete defense to the collection of removal costs. Where the third party is an employee, agent or otherwise in a contractual relationship with the responsible party, however, that provision does not apply. *Id.* Nor does that provision apply if the responsible party is himself negligent. *Id.*

Mizhir contends that service of the truck brakes at Bergevin's on the day before the accident was negligent and that the failure of the brakes which caused that accident is attributable to Bergevin's and not to him.

The government response is twofold. First, the government persuasively argues that Bergevin's was an agent of Mizhir because the two were in a contractual relationship. Section 2703(a)(3) exempts from the third party defense any agent or party in a contractual relationship with the responsible party. *See also United States v. J.R. Nelson Vessel, Ltd.,* 1 F.Supp.2d 172 (E.D.N.Y.1998); *International Marine Carriers v. Oil Spill Liability Trust Fund,* 903 F.Supp. 1097 (S.D.Tex.1994). Thus, Mizhir cannot, as a matter of law, avail himself of that defense.

The government also contends that, even if Bergevin's were found not to be an agent or otherwise in a contractual relationship with Mizhir, Section 2703 affords a third party defense only if Mizhir himself was not negligent. The service records from Bergevin's indicate that its mechanic inspected the truck and told Mizhir the brakes were "unsafe" and "not to drive truck."

Clearly, Mizhir was aware of the dangerous condition of his brakes and that it was foreseeable that they might fail. A reasonable jury could not find that Mizhir was not at least partly at fault for the accident and subsequent oil spill on December 21, 1994. For those two reasons, Mizhir cannot reasonably assert the third party defense provided by Section 2703.

## ORDER

For the reasons set forth in the Memorandum above:

1. the motion of the plaintiff, the United States, for summary judgment (Docket No. 11) is ALLOWED; and

2. the cross motion of the defendant, George Mizhir d/b/a Mizhir Oil Company, for summary judgement (Docket No. 14) is DENIED AS MOOT.

So ordered.