United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30366

_____

TETRA TECHNOLOGIES, INC.,

                                    Plaintiff - Appellant,

versus

KANSAS CITY SOUTHERN RAILWAY CO.,

                                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 03-CV-1272

_____

Before KING, Chief Judge, JOLLY and DENNIS, Circuit Judges.

PER CURIAM:[*]

     This case arises from the November 2001 derailment of a Kansas

City Southern Railway ("KCS") train carrying limestone to Tetra

Technologies' ("Tetra") plant in Lake Charles, Louisiana.  A rail

car struck an above-ground pipeline that delivered hydrochloric

acid to Tetra's facility, causing the pipeline to shift several

feet onto the shoreline of an adjacent waterway.  Although the

inner wall of the pipe ruptured, the pipe's outer wall did not.

Thus the acid was contained within the pipe, and no leakage or

spillage occurred.

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Tetra repaired the pipeline and demanded that KCS pay $236,395 to compensate it for costs related to the accident. On July 3, 2002, KCS responded in a letter that stated it would pay $24,387.96 to compensate Tetra for the cost of repairing the pipeline; it further stated that it considered the additional amount demanded by Tetra unreasonable and exorbitant.

Further negotiations were unsuccessful, and, on July 2, 2003, Tetra filed this action. The complaint alleged various claims under Louisiana law, the Clean Water Act, and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). KCS filed a 12(b)(6)[2] motion to dismiss on two basic grounds: (1) Tetra's state law tort claim had prescribed; and (2) Tetra could not state a claim under either of the federal environmental statutes cited in its complaint. The district court agreed and dismissed all of Tetra's claims. We have reviewed the briefs and the pleadings, and we have heard oral argument well presented by the parties. We are unpersuaded that the district court erred. Furthermore, there is little to be said in resolving this appeal because the precedents and statutes are clear in controlling the outcome of this case.

We review the district court's grant of a 12(b)(6) motion to dismiss de novo. Jackson v. City of Beaumont Police Dept., 958 F.2d 616, 618 (5th Cir. 1992). First, we conclude that the

---

[2] Fed. R. Civ. P. 12(b)(6).

district court properly found that Tetra's Louisiana tort claim had prescribed because KCS's July 2003 letter was a settlement offer and not an acknowledgment of liability. It therefore did not toll prescription, which ran from November 2001. See Lima v. Schmidt, 595 So. 2d 624, 634 (La. 1992).

Furthermore, the district court did not err in holding that Tetra failed to state a claim for breach of an implied warranty to transport freight safely because Tetra did not allege in its complaint that the limestone was damaged in the accident. See La. Rev. Stat. Ann. § 45:1100.

Tetra's claims under the Louisiana Hazardous Substances Remedial Action Act were also properly dismissed because, by not making a written demand on KCS at least sixty days before filing suit, Tetra failed to follow the statute's procedural requirements for private suits against a generator, transporter or disposer of hazardous substances. See La. Rev. Stat. Ann. § 30:2276(G)(3).

Next, Tetra's claim for unjust enrichment under the Clean Water Act must fail because no acid was discharged from the pipeline as a result of the accident. Therefore, the Government could not have recovered from KCS pursuant to § 1321(g), and KCS was not unjustly enriched as a result of the Government's failure to seek a recovery. See 33 U.S.C. § 1321(g).

We also affirm the district court's dismissal of Tetra's claim under CERCLA. Under CERCLA, the relevant "vessel or facility," in

3

this case, the pipeline, must belong to the liable party. Here, Tetra owns the pipeline from which the acid threatened to discharge. Therefore, KCS is not a "responsible person" such that it can be sued under CERCLA. See 42 U.S.C. § 9607(a); Uniroyal Chemical Company, Inc. v. Deltech Corp., 160 F.3d 238 (5th Cir. 1998).

Finally, we turn to Tetra's reimbursement claim under the Clean Water Act. Tetra attempts to fit its Clean Water Act claim into three separate provisions of that statute -- §§ 1321(g), (h), and (i). We have already determined that § 1321(g) is inapplicable here because there was no discharge. Section 1321(h) does not create a cause of action. Thus, Tetra's Clean Water Act claim depends on its assertion that § 1321(i) permits recovery in this case. We hold that it does not.

Section 1321(i) provides that, "where an owner or operator of a vessel or onshore facility from which ... a hazardous substance is discharged in violation of subsection (b)(3)" acts to remove the hazardous substance, said owner or operator may recover removal costs from a third party if it can establish that an "act or omission of [the] third party" caused the discharge. A "discharge in violation of subsection (b)(3)" is defined as a "discharge of oil or hazardous substances into or upon the navigable waters of the United States [or] adjoining shorelines." It is undisputed that no hydrochloric acid ever escaped the pipeline at Tetra's

4

facility.  Thus, Tetra has no cause of action under § 1321(i).[3]

In sum, the district court's dismissal of Tetra's claims is, in all respects,

AFFIRMED.

---

[3]At oral argument, Tetra noted that § 1321(a)(25)(a definition subsection, not a liability subsection) defines "removal costs" to include the costs incurred to mitigate or minimize the threat of a discharge.  Tetra then contended that because § 1321(i) permits recoveries for removal costs, it should be able to recover under that subsection.  This reading of § 1321 is without merit because, among other reasons, it would render superfluous the language of §§ 1321(i)(a liability subsection) and (b)(3) requiring an actual discharge into navigable waters or onto shorelines.