# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2017

Lyle W. Cayce
Clerk

No. 16-30459

In re: In the Matter of the Complaint of Settoon Towing, L.L.C., as Owner and Operator of the M/V Hannah C. Settoon, for Exoneration from or Limitation of Liability


SETTOON TOWING, L.L.C., Owner and Operator of the M/V Hannah C. Settoon,

      Petitioner - Appellee

v.

MARQUETTE TRANSPORTATION COMPANY, L.L.C.,

      Claimant - Appellant

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

One flotilla of barges encountered another on the lower Mississippi River. Both followed the usual protocol of entering an agreement by radio for how one was to overtake and pass the other. A collision nonetheless resulted, causing an oil spill that closed a portion of the river for two days. Cleanup was immediately undertaken. Who ultimately pays and how much are what this suit is about.

No. 16-30459

The litigation is governed by the federal Oil Pollution Act, or OPA. No one contests that Settoon Towing was properly charged by the Coast Guard with the initial cleanup and remediation, thus initially paying all expenses under the strict-liability statutory scheme. The district court, though, found both Settoon and Marquette Transportation to be negligent. Our principal issue is whether Settoon can receive contribution under the OPA from Marquette for its payment of purely economic damages, *i.e.*, for the cleanup costs. A hoary bit of maritime law has traditionally said, "no." We conclude that the OPA clearly says, "yes." Marquette's arguments to the contrary try to make the statutory question seem a whole lot harder than it really is.

The district court allowed contribution and determined the percentage of fault of each party. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2014, the M/V HANNAH C. SETTOON, towing two crude oil tank barges, and the M/V LINDSAY ANN ERICKSON, towing twenty-one loaded grain barges, were both heading downstream on the lower Mississippi River. The LINDSAY began to stop just after it passed the College Point[1] bend near Convent, Louisiana. It was preparing to "top around" with the help of a towboat in order to drop off three of her barges and then head back upriver. At approximately 2:58 p.m., as the HANNAH was in the same bend and about 3,500 feet behind the LINDSAY, the vessels communicated by radio and entered into what the parties call a "one whistle overtaking

---

[1] So named due to the College of Jefferson which opened there on the east bank of the river in 1834. Since 1931, the Roman Catholic order of Jesuits has used the former college's 1842 main building and other structures for retreats. OLIVER P. CARRIERE, A SKETCH OF THE HISTORY OF JEFFERSON COLLEGE AND MANRESA HOUSE OF RETREATS, CONVENT, LOUISIANA 8–9, 21 (1974).

agreement."

According to the agreement, the HANNAH would pass the LINDSAY on her stern while the LINDSAY would hold steady. Once the HANNAH was clear, the LINDSAY would begin her top around. The width of the river at the location of the overtaking and passing is about 3,000 feet.

Consistent with the agreement, the HANNAH increased her speed and maneuvered in order to remain midway between the LINDSAY and the west bank of the Mississippi River. For approximately three and a half minutes, the LINDSAY held her position in the river. At 3:07 p.m., before the HANNAH had passed the LINDSAY, the HANNAH by radio seemingly released the LINDSAY from the agreement. The LINDSAY acknowledged. At some point prior to the HANNAH completely passing the LINDSAY, the LINDSAY began reversing into the river to start her top-around. At 3:09 p.m., her stern collided with the portside bow of a crude-oil barge towed by the HANNAH. Approximately 750 barrels of light crude oil were discharged into the Mississippi River. As a result, a 70-mile stretch of the river was closed to vessels for approximately 48 hours for cleanup and recovery.

Settoon was named the strictly liable "Responsible Party" by the United States Coast Guard pursuant to the OPA. That phrase is a term of art central to this appeal and will be much discussed later. Settoon carried out its statutory responsibilities related to cleanup, remediation, and third-party claims for damages. Settoon subsequently filed Limitation of Liability proceedings pursuant to 46 U.S.C. §§ 30501–30512 in the Eastern District of Louisiana. Marquette also filed a claim. Settoon brought a counterclaim against Marquette seeking contribution under the OPA, the general maritime law, or both.

At the conclusion of a four-day bench trial on the issue of liability, the

No. 16-30459

district court determined both parties were at fault and apportioned 65% of the fault for the collision to Marquette and 35% to Settoon. The district court also considered a question for which, surprisingly, there is little authority: Is a Responsible Party entitled to contribution for purely economic damages from a third party found to be partially liable? The district court answered that such contribution is permitted. Marquette timely filed its notice of appeal.

## DISCUSSION

Marquette claims the district court erred in two ways: (A) the OPA does not allow a Responsible Party to obtain contribution from a partially liable third party, and even if it does, (B) the district court erred in its allocation of relative fault. Because the first issue raises legal questions of statutory interpretation, our review is *de novo*. *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 220 (5th Cir. 2007). As for the second issue, a trial court's finding on apportionment of relative fault in a maritime collision is reviewed under a clearly erroneous standard. *See Tokio Marine & Fire Ins. Co. v. FLORA MV*, 235 F.3d 963, 970 (5th Cir. 2001).

Our approach is first to discuss some basics about the relevant statute. Then, with that background, we analyze the two issues before us.

## I.    *The Oil Pollution Act of 1990*

The enactment that controls this litigation was a legislative response to the grounding of the oil tanker *Exxon Valdez* and the spilling of over eleven million gallons of crude oil into the waters of Prince William Sound, Alaska. *See* 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW § 18-4 (5th ed. 2016). The OPA is Congress's effort "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and

4

No. 16-30459

internalize the costs of spills within the petroleum industry." *Rice v. Harken Expl. Co.*, 250 F.3d 264, 266 (5th Cir. 2001). The OPA is codified at 33 U.S.C. §§ 2701–2762.

The OPA facilitates prompt cleanup and compensation by first requiring the President to "designate the source or sources of the discharge," who is called the "responsible party." 33 U.S.C. § 2714(a). In 1991, the President delegated that duty to the Coast Guard.[2] The "responsible party" in the case of a vessel is "any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32)(A). The OPA makes the responsible party "strictly liable for cleanup costs and damages and first in line to pay any claims for removal costs or damages that may arise under OPA." *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 422 n.2 (5th Cir. 2014). "Notwithstanding any other provision or rule of law . . . each responsible party . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident." 33 U.S.C. § 2702(a). There are three absolute defenses, but they are not relevant in this case.[3]

Well before the enactment of the OPA, it was clear that general maritime law did not permit recovery of purely economic losses. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307–09 (1927). Since our decision in

---

[2] "The functions vested in the President by Section 1014 of OPA [33 U.S.C. § 2714], respecting designation of sources of discharges or threats, notification to responsible parties, . . . the advertisement of designation, and notification of claims procedures, are delegated to the Secretary of the Department in which the Coast Guard is operating." Exec. Order No. 12,777, 56 Fed. Reg. 54,757, 54,768 (Oct. 18, 1991). The imprecision in identifying a Department is because the Coast Guard is within the Department of Homeland Security except when it is transferred to the Department of the Navy during wartime. *See* 14 U.S.C. § 3.

[3] The absolute defenses from liability, which the Responsible Party need establish by a preponderance of the evidence, are these: "(1) an act of God; (2) an act of war; or (3) an act or omission of a third party," with certain exceptions. *See* 33 U.S.C. § 2703(a).

No. 16-30459

*Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir. 1985) (en banc), this circuit "has consistently applied the rule limiting recovery in maritime cases to plaintiffs who sustain physical damage to a proprietary interest." *In re Bertucci Contracting Co.*, 712 F.3d 245, 246–47 (5th Cir. 2013). Under the OPA, though, recovery of economic losses is allowed without physical damage to a proprietary interest. *See* 33 U.S.C. § 2702(b)(2)(E). The only restriction on such recovery is that the loss must be "due to the injury, destruction, or loss of real property, personal property, or natural resources[.]" *Id.*

Marquette's statutory argument is that the right to contribution Settoon claims here for reimbursement of a percentage of all its costs from a jointly negligent party does not arise under the OPA. Instead, it argues that any contribution it owes is based on general maritime law and therefore is subject to the *Robins Dry Dock* bar to purely economic damages. If general maritime law is the sole source for the right to contribution, the total damages of about $4,265,000 would need to be reduced by the $1,450,000 in damages for purely economic-loss claims.

## II. Marquette's Issues on Appeal

### A. Does the OPA Allow Contribution for Purely Economic Damages?

Our task is to discern the meaning of a statute. If the statute's language is unambiguous, we apply the plain language absent some resulting absurdity. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). Yet we do not look at language in isolation, as it is important to examine the statute "as a whole and [be] mindful of the linguistic choices made by Congress." *Whatley v. Resolution Tr. Corp.*, 32 F.3d 905, 909 (5th Cir. 1994). During this interpretive process, "plain statutory language is the most

instructive and reliable indicator of Congressional intent." *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008). Our power "to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), is constrained by our mandate to "respect the role of the Legislature, and take care not to undo what it has done," *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015).

One clear requirement of the OPA is that liability and damages are determined in a three-step process. First, the injured party must present its claim for damages to the designated Responsible Party. 33 U.S.C. § 2713(a). The Coast Guard identified Settoon as the Responsible Party, and that is not challenged. Second, if the Responsible Party rejects the claim or refuses to settle it within 90 days, the injured party has a statutory cause of action to sue the Responsible Party for its damages or to seek recovery from the government-created Oil Spill Liability Trust Fund. *Id.* § 2713(c). Third, once the Responsible Party pays compensation, it may seek partial or complete repayment from others by means of contribution or subrogation. *Id.* § 2709 (contribution); § 2715 (subrogation).

Six categories of damages are detailed in Section 2702(b)(2). One of them, Subsection (E), expressly allows for recovery of purely economic losses from the Responsible Party. *Id.* § 2702(b)(2)(E). Claimants must first directly assert claims against Settoon,[4] the Responsible Party, and purely economic loss damages may be claimed. Our question, though, is whether a Responsible Party, after suffering purely economic losses, may seek an apportioned contribution for those losses from some other tortfeasor. We will examine two sections of the OPA as we consider this issue.

---

[4] "The text of OPA implies its mandatory and exclusive nature. . . . Section 2713(a) uses the absolute words 'all' and 'shall,' directing the course of action for 'all claims' and mandating that they 'shall' be presented first to the responsible party." *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 745 (E.D. La. 2009).

No. 16-30459

We begin with the first section of the OPA after the definitions are out of the way, which is Section 1002 or, as codified, 33 U.S.C. § 2702. Entitled "Elements of liability," it details the obligation of the Responsible Party for the cleanup and identifies which costs of the federal and state governments it must reimburse and the damages for which it must compensate. 33 U.S.C. §§ 2702(a), (b). Marquette argues that a particularly relevant subsection is Section 2702(d), entitled "Liability of third parties." What Marquette finds especially attractive is that it applies only when the entity the Coast Guard designated as the Responsible Party was in fact not at fault at all and others were solely responsible for the discharge of oil. In such a case, liability will shift and the other party or parties will become the equivalent of the Responsible Party under the OPA and thus obligated to pay all costs:

(d) Liability of third parties

(1) In general

(A) Third party treated as responsible party

Except as provided in subparagraph (B), in any case in which a responsible party establishes that a discharge or threat of a discharge and the resulting removal costs and damages were caused solely by an act or omission of one or more third parties described in section 2703(a)(3) of this title (or solely by such an act or omission in combination with an act of God or an act of war), the third party or parties shall be treated as the responsible party or parties for purposes of determining liability under this subchapter.

(B) Subrogation of responsible party

If the responsible party alleges that the discharge or threat of a discharge was caused solely by an act or omission of a third party, the responsible party—

(i) in accordance with section 2713 of this title, shall pay removal costs and damages to any claimant; and

8

(ii) shall be entitled by subrogation to all rights of the United States Government and the claimant to recover removal costs or damages from the third party or the Fund paid under this subsection.

*Id.* § 2702(d).

This section is inapplicable to our issue because Settoon's principal argument is not that it should be subrogated to the United States and any claimants in order to be reimbursed for all its payments. Instead, it seeks contribution toward what it paid based on the percentage of fault allocated to Marquette. A later section of the OPA addresses that concept. That later section's austerity of language is the opening for Marquette's argument:

A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law. The action shall be brought in accordance with section 2717 of this title.

*Id.* § 2709 (entitled "Contribution"). Marquette argues that the OPA itself does not establish a right to contribution but merely acknowledges it remains available under general maritime law with all that body of law's restrictions including, most relevant, no recovery for purely economic damages.

In Marquette's view, the OPA works like this. There is an initial designation by the Coast Guard of a Responsible Party. That party bears all initial costs. Because time is of the essence after a spill, the designation is straightforward — "the source or sources of the discharge" will be tagged. *Id.* § 2714(a). Here, Settoon's barge was carrying the oil that discharged. Thus, Settoon was in charge of the cleanup. Only later will the sorting out occur regarding who was actually at fault. When that time comes, the initially designated Responsible Party will be entitled to subrogation if it can show that another party was solely at fault. As to contribution, Marquette contends a Responsible Party will have no rights under the OPA but will be able to recover

9

apportioned shares of the costs from others who are liable under other laws, namely, general maritime law. That means a Responsible Party must bear the entirety of what it paid for purely economic damages, though it may recover the allocated portions of payments it made for damages recognized under general maritime law.

We disagree with Marquette's key conclusion. Under the principle that we should apply the plain meaning of statutory language while considering its context in the overall enactment, we hold it to be plain that both subrogation and contribution are available "under this Act." That is what Sections 2702 and 2709 say. Marquette's argument would wholly eliminate contribution *under the Act* and restrict a Responsible Party to seek reimbursement for cleanup expenses only from a later-designated solely-at-fault entity.

Marquette insists the language is not that plain, and it cites allegedly supportive caselaw. It uses a Ninth Circuit decision that examined, under Section 2702(d)(1)(A), the shifting of fault from the initially designated Responsible Party to another participant in the accident; the court emphasized that no such shift occurs unless the other is solely at fault. *See Unocal Corp. v. United States*, 222 F.3d 528, 534 (9th Cir. 2000). In that case, though, the Responsible Party sued two other parties claiming they were solely responsible for the oil spill. *Id.* at 533. After a trial, a jury concluded that the two third parties were indeed liable and were the sole causes of the spill. *Id.* Fault was apportioned between the third parties, 80% and 20%, respectively. *Id.* The appellate court affirmed the jury's verdict. *Id.* at 536. That decision is a simple application of the OPA's rules on subrogation. We see nothing in the decision that even addresses how contribution works when the originally designated Responsible Party is partly but not entirely at fault.

Marquette also refers us to one of our unpublished decisions in which we,

like the *Unocal* court*,* applied Section 2702(d)(1)(A).  *See Gabarick v. Laurin Mar. (Am.), Inc*., 406 F. App'x 883, 888 (5th Cir. 2010).  In the course of doing so, we explained the next section of the OPA, which is entitled "Defenses to liability."  *See* 33 U.S.C. § 2703.  That section elaborates that a Responsible Party has a complete defense to any liability if it can show someone else was solely at fault.  *Gabarick*, 406 F. App'x at 888 (citing 33 U.S.C. § 2703(a)(3)).  Marquette's continuing point is that the only contribution Settoon is entitled to "under this Act" is under Section 2702 when another is solely liable, which would mean Section 2709 adds nothing significant to the concept.  Our continuing response is that Marquette is looking at one section in isolation.

We hold, therefore, that contribution is available under the OPA.  That is not to say what the scope of contribution may be.  The OPA does not define that term.  When a common legal term is used but not specifically defined in a statute, we give that term its general legal meaning.  *See Bradley v. United States*, 410 U.S. 605, 609 (1973).  An apt definition for contribution is this: "One tortfeasor's right to collect from joint tortfeasors when, and to the extent that, the tortfeasor has paid more than his or her proportionate share . . . ." BLACK'S LAW DICTIONARY (10th ed. 2014).  The related but distinct legal concept, "subrogation," is defined as a "substitution of one party for another whose debt the party pays . . . ." *Id.*

If any limitation is to be placed on the types of damages for which contribution may be recovered under the OPA, the limit must be in the statute. We do not perceive any limitation from the manner in which the separate concept of subrogation is explained.  Perhaps, though, the word "liable" can do the work.  The OPA explains that "'liable' or 'liability' shall be construed to be the standard of liability which obtains under section 1321 of this title," which is a section of the Clean Water Act ("CWA") entitled "Oil and hazardous

substance liability." 33 U.S.C. § 2701(17); *see also id.* § 1321.

We thus examine how the CWA treats liability for oil pollution. As with the OPA, it provides (with certain exceptions) that the "owner or operator of any vessel from which oil or a hazardous substance is discharged" is initially liable for all the costs of removal of the pollution. *Id.* § 1321(f)(1). Also as under the OPA, if a discharge of oil "was caused solely by an act or omission of a third party," the third party is liable "for the full amount of such removal costs" which may be recovered by the initially responsible party through subrogation. *Id.* § 1321(g). In addition, in a subsection entitled "Rights against third parties who caused or contributed to discharge," the CWA provides that "liabilities established by this section shall in no way affect any rights which (1) the owner or operator of a vessel or of an onshore facility or an offshore facility may have against any third party whose acts may in any way have caused or contributed to such discharge," nor does the section affect (2) the rights of the United States against such third parties. *Id.* § 1321(h).

We ask the same question of the CWA as we have of the OPA — does it create or just preserve a right of contribution? This court has already answered the question as to the CWA in a non-precedential opinion, where we held that Section 1321(h) does not create a right to contribution. *See Tetra Tech., Inc. v. Kansas City S. Ry. Co.*, 122 F. App'x 99, 102 (5th Cir. 2005). We agree with that conclusion in light of the CWA's plain language — "liabilities established by this section shall in no way affect" any rights a vessel owner "may have" to contribution. *See* 33 U.S.C. § 1321(h). Section 1321(h) has been described as preserving the right of contribution without serving as its source. *Keller Transp., Inc. v. Wagner Enters., LLC*, 873 F. Supp. 2d 1342, 1352 (D. Mont. 2012). We perforce agree with that characterization in light of the CWA's clear statutory language.

Where are we?  We know that liability under the OPA is determined under the same standard as for the CWA.  The latter Act relies on other law to determine if a Responsible Party may seek contribution from another who was partially but not entirely responsible for the discharge.  The OPA, though, has no similar reliance solely on other law to create a right to contribution.  Instead, Section 2709 is solely about contribution, from title through content.  It must contemplate that one tortfeasor may sue another for less than complete reimbursement, else the section is a nullity.

Most importantly for us, Section 2709 is premised on there being liability for contribution *under the Act* when it says "a civil action for contribution [may be brought] against any other person who is liable or potentially liable under this Act . . . ."  33 U.S.C. § 2709.  Yes, we elided the "or another law" that ends the sentence, but that is only to show that the section recognizes contribution among joint tortfeasors can arise under the Act.  To interpret otherwise is to make superfluous the premise that contribution at times arises under the Act.  "The rule against superfluities complements the principle that courts are to interpret the words of a statute in context."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  This basic interpretive rule has been summarized as meaning that no provision of a statute should be "inoperative or superfluous, void or insignificant . . . ."  2A N. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46.6 (7th ed. 2016).

Section 2709 identifies the set of parties who may be called on for contribution under the OPA by referring to those who are "potentially liable."  That phrase also is not statutorily defined.  Certainly if the party designated by the Coast Guard as responsible brought a civil action against another party and proved that the latter was solely the cause of a discharge, then that second party's potential liability would be shown to have arisen under the Act.  We

have already discussed that eventuality: the initially designated Responsible Party would be entitled to recover all its relevant costs through the Section 2702(d)(1)(B) right to be subrogated to the United States.

Our factual situation is different. This record does not support that Marquette was solely the cause of this accident. Marquette, though, was "potentially liable" even if "liable" means the entity responsible for the entire incident. Any tortfeasor allegedly contributing to the cause of the discharge is "potentially liable" under the Act until there are fact-findings that either confirm or reject complete liability. Factual determinations must be made, be appealed, and become final. Until then, there is a legal potential that any entity who had some role in causing the pollution is liable. Giving that broad meaning to "potentially liable" is logical considering the expansive reach of the OPA and the financial impact on strictly liable Responsible Parties of paying for damages that they did not factually cause.

We find support for this interpretation from another strict-liability enactment, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). *See* 42 U.S.C. §§ 9601–9675. One of its sections provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title[.]" *Id.* § 9613(f)(1). Though not as expansive as Section 2709, which allows for contribution to reach those "liable" or "potentially liable" under the Act or any other law, actions brought under CERCLA's contribution provision are "intended to provide a liable party under CERCLA with a cause of action to mitigate the harsh effects of joint and several liability. . . ." *Elementis Chromium L.P. v. Coastal States Petrol. Co.*, 450 F.3d 607, 612 (5th Cir. 2006).

We have interpreted "potentially liable" in CERCLA to include all who are sued under the Act:

No. 16-30459

> The terms "liable or potentially liable" . . . are not defined in the statute. However, after examining the text and the structure of CERCLA, we think that the most sensible reading of the statute demands that, even before any determination of actual liability, a party may be "potentially liable" simply by being sued under the statute. The courts may eventually clear a CERCLA defendant or third-party defendant from liability; but until it does, such a defendant is at least *potentially* liable.

*OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574, 1582 (5th Cir. 1997) (citations omitted).  Attaching the "potentially liable" label to all who are sued under CERCLA "allows parties to bring contribution actions after settlements, stipulations, or judicial determination of liability, within the three-year limitations period."  *Id.* at 1583.  A similar three-year limitations period applies under the OPA.  33 U.S.C. § 2717(f)(3).

Even if it is correct to say that no provision in the OPA explicitly uses the word "liable" in relation to anyone other than the entity solely responsible for the damage, the phrase "potentially liable" completes the statutory scheme. The entity from whose vessel the oil was discharged must immediately turn to the cleanup without concerning itself with ultimate financial responsibility. Once done, that party may through contribution or subrogation seek payment from all others who were partially or completely at fault.

We examine some of Marquette's counters to this analysis.  For example, Marquette discusses a Louisiana federal district court opinion holding that general maritime law and not the OPA governs the Section 2709 contribution action of a Responsible Party against a joint-fault third party.  *Gabarick v. Laurin Mar. (Am.) Inc.,* No. 08-4007, 2010 WL 147216, at *2 (E.D. La. Jan. 11, 2010), *rev'd and remanded*, 406 F. App'x 883 (5th Cir. 2010).  In that case, a third party alleged to be at fault for an oil spill sought summary judgment against the Responsible Party for all claims that fell under the OPA.  *Id.* at *1.

The district court granted summary judgment for the third party on the grounds that evidence precluded finding the third party solely liable under Section 2702(d)(1)(A) of the OPA. *Id.* at *2. The court also concluded that the Responsible Party was "not precluded from seeking contribution under any law other than the OPA." *Id.*

We reversed because we held there was insufficient factual development to assign fault at that stage in the case. *Gabarick*, 406 F. App'x at 890. We did not discuss the part of the district court's analysis on which Marquette wishes to rely. The district court in *Gabarick* never mentioned Section 2709, which specifically deals with contribution as opposed to subrogation. We have mentioned, analyzed, and held Section 2709 to be dispositive.

Marquette also relies on two out-of-circuit district court decisions. The first involved a catastrophic oil spill in the Chicago Sanitary Ship Canal. *See United States v. Egan Marine Corp.*, 808 F. Supp. 2d 1065, 1071 (N.D. Ill. 2011). The Responsible Party sought contribution against a third party whose alleged negligence in loading oil on its barge "was the sole or partial cause of the explosion and spill." *Id.* at 1072. In resolving the third party's summary-judgment motion, the district court also focused its analysis only on Section 2702(d)(1)(A), which is the provision that governs when a third party is determined to be solely at fault. *Id.* at 1080. Because the Responsible Party failed to create a genuine issue of material fact that the third party "solely caused the oil spill," the court determined that "the OPA does not provide grounds for contribution." *Id.* at 1082. The court interpreted the OPA as providing contribution only when another entity is solely responsible, but the court never tried to explain why there would be one OPA section on subrogation and another on contribution. Respectfully, we disagree with *Egan.*

Marquette refers us to one more district court decision. *See Nat'l*

16

*Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1439 (E.D. Va. 1996), *aff'd sub nom. Nat'l Shipping Co. of Saudi Arabia v. Moran Trade Corp. of Delaware*, 122 F.3d 1062 (4th Cir. 1997). Highlighted is language that general maritime law controlled contribution. *Id.* at 1450. The reason, though, was that the third party from whom contribution was being sought had a defense to liability under the OPA, namely, that it was in a contractual relation with the Responsible Party. *Id.* at 1446 n.4 (citing 33 U.S.C. § 2703(a)(3)); *see also id.* at 1450. Thus contribution was limited to that under the "other law" portion of Section 2709. *Id.* at 1450.

Through this caselaw, Marquette argues its liability arises only under general maritime law, leaving any contribution obligation subject to the *Robins Dry Dock* rule. "The short answer is that Congress did not write the statute that way." *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Relevant to our interpretive task, a member of this panel while serving as a judge on the Eastern District of Louisiana wrote that, based on reading the statute as a whole, the "OPA establishes an entirely new, federal cause of action for oil spills." *Tanguis v. M/V WESTCHESTER*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (Clement, J.). The OPA's "new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies." *Id.*

Another particularly well-experienced district judge explained the expansion of recovery under the OPA beyond general maritime law:

> Congress intended OPA to allow a broader class of claimants to recover economic losses than allowed under general maritime law. Consistent with this intention, Subsection (E) does not require the plaintiff to be the owner of the property or natural resources injured, destroyed, or lost in order to recover under that Section. Thus, the *Robins Dry Dock* rule does not apply to a claim pursued under Subsection (E) of OPA.

*In re: Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20,*

*2010*, 902 F. Supp. 2d 808, 815–16 (E.D. La. 2012) (Barbier, J.) (citation omitted).

We also conclude that limiting Section 2709 liability to contribution only under general maritime law is inconsistent with the OPA's savings clause for admiralty and maritime law. One section provides: "*Except as otherwise provided in this Act*, this Act does not affect — (1) admiralty and maritime law; or (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction . . . ." 33 U.S.C. § 2751(e) (emphasis added). The emphasized language shows that the admiralty claims that are preserved are those that are not addressed in the OPA. *See Moran*, 924 F. Supp. at 1447. The contribution that is being sought in this case is addressed in the OPA. Marquette's view of the interplay between Section 2709 and Section 2751 would transform the "savings clause" into a supremacy clause by advancing general maritime law over the express provisions of the OPA. In another context, we rejected a similar argument, saying that "courts cannot, without any textual warrant, expand the operation of savings clauses to modify the scope of displacement under OPA." *Am. Commercial Lines,* 759 F.3d at 426.

The OPA provides a procedure for submission, consideration, and payment of costs and damages associated with an oil spill. Responsible parties are also afforded a few absolute defenses from liability. *See* 33 U.S.C. § 2703(a). If no defense applies, "the responsible party will always bear first-level liability, but will be able to recover over against third parties either through contribution according to principles of comparative fault or by invoking a hold harmless or indemnification agreement, if applicable." *See* 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW § 18-3 n.26 (5th ed. 2016).

We often resolve statutory interpretation questions based solely on the

language of the statute: "Where the statute is so lucid, we need not look to the legislative history for further guidance." *Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990). We have noted some interpretive hurdles here, though, and look to the legislative history as either strengthening or weakening the analysis.

The legislative history recognizes OPA's comprehensive nature and identifies the significance of contribution in the overall remedial scheme. The Conference Report discussed the House's suggested contribution provision, subject to certain presentment requirements. *See* H.R. REP. NO. 101-653, at 110–11 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 779, 789. Perhaps most important for our purposes, the language of the contribution provision was "changed to allow actions for contribution against any person who is liable or *may be liable* under any law." *Id.* (emphasis added). That the OPA itself would largely control liability was also clear:

> Liability under this Act is established notwithstanding any other provision or rule of the law. This means that the liability provisions of this Act would govern compensation for removal costs and damages notwithstanding any limitations under existing statutes such as the act of March 3, 1851 (46 U.S.C. 183), or under existing requirements that physical damage to the proprietary interest of the claimant be shown.

H.R. REP. NO. 101-653, at 103, *as reprinted in* 1990 U.S.C.C.A.N. 779, 781. As to Section 2702(b)(2)(E), a "claimant need not be the owner of the damaged property or resources to recover for lost profits or income. For example, a fisherman may recover lost income due to damaged fisheries resources, even though the fisherman does not own those resources." *Id.*

Numerous other courts and legal scholars agree that the OPA nullifies the *Robins Dry Dock* limitation. A maritime law professor put it this way: "Congress plainly intended . . . to overrule *Robins* [*Dry Dock*] legislatively with

19

No. 16-30459

respect to claims for lost profits and impairment of earning capacity resulting from oil spills." Robert Force et al., *Deepwater Horizon: Removal Costs, Civil Damages, Crimes, Civil Penalties, and State Remedies in Oil Spill Cases*, 85 TUL. L. REV. 889, 930–31 (2011) (citing S. REP. NO. 101-94, at 14–15 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 736). [5]

We conclude that the most reasonable interpretation of the language of the OPA, as confirmed by the Act's legislative history, grants to an OPA Responsible Party the right to receive contribution from other entities who were partially at fault for a discharge of oil. Specifically, a Responsible Party may recover from a jointly liable third party any damages it paid to claimants, including those arising out of purely economic losses.

*B. Was the Apportionment of Fault Clearly Erroneous?*

Even though contribution is allowed, that does not mean the allocation of comparative fault made by the district court is correct. Marquette argues it was improper to assign it 65% of the fault. It provides an extensive list of cases where an overtaking or give-way vessel, here the HANNAH owned by Settoon, was assigned more fault. Marquette argues that when two vessels commit an equal number of statutory faults, and one is obligated to give-way, the greater share of fault should be placed on the burdened or give-way vessel, barring exceptional circumstances.

Marquette contends that a decision by the Ninth Circuit supports its argument that only in rare circumstances should the overtaken or privileged vessel be responsible for the majority of fault under a comparative-fault

---

[5] *See generally* David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss,* 30 MISS. C. L. REV. 157, 167 n.41 (2011) (collecting cases and commentary).

regime.  *See Crowley Marine Servs., Inc. v. Maritrans, Inc.*, 530 F.3d 1169, 1175 (9th Cir. 2008).  In *Crowley*, the court took notice of the unusual facts of the case when it affirmed the district court's assessment of fault, which assigned greater liability to the overtaken vessel.  *Id.*  Those unusual facts included: (1) the overtaken vessel's Captain's history of alcoholism and serious medical problems; (2) the vessel owner's knowledge of these problems; and (3) "the coordinated maneuvers of the two vessels[.]"  *Id.*  Based on this allocation of fault, Marquette requests we reverse and reapportion fault 65% to Settoon.

These or related arguments needed to be, and were, presented to the district court.  They have little role on appeal, as our review of a district court's apportionment of fault applies the deferential standard of clear error.  *See Tokio Marine*, 235 F.3d at 970.  This is particularly important in a bench trial where the district court's opportunity to judge the witnesses' credibility weighs strongly.  *See Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).  "Where both parties to a collision are in violation of statutes designed to prevent collisions, the court may apportion fault between the parties, unless either party proves that its statutory violation was not a substantial contributing cause of the collision."  *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 364 (5th Cir. 2006).

Nothing in Marquette's argument on apportionment convinces us the district court clearly erred.  While the court did not provide a detailed explanation for its apportionment of fault, it made the requisite allocation of fault based on the facts before it.  "[E]ven if we might have given different weight to different pieces of evidence than did the district court, this is not a reason to disturb that court's findings of relative responsibility, absent a showing of clear error."  *Tokio Marine*, 235 F.3d at 971.

AFFIRMED.